■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES SLATER, Appellant.—Weiss, J. Appeal from a judgment of the County Court of Albany County (Turner, Jr., J.), rendered January 27, 1989, upon a verdict convicting defendant of the crimes of criminally negligent homicide and operating a motor vehicle while under the influence of alcohol.

Defendant began drinking at his sister-in-law's house on the evening of December 4, 1987 and thereafter continued drinking at several bars. The events of this particular evening culminated at approximately 3:00 A.M. on December 5, 1987, when defendant was driving to his home in the City of

Watervliet, Albany County, after eating at a fast-food restaurant in the City of Troy, Rensselaer County. As he drove his automobile over the Green Island Bridge, defendant struck three individuals walking in what was delineated as the bicycle lane, which was often used by pedestrians. One person was killed and the other two were seriously injured. Defendant reported the accident at a police station and was placed under arrest at approximately 4:00 A.M. for driving while under the influence of alcohol. Defendant received both *Miranda* and driving while under the influence of alcohol warnings. Defendant stated that he did not wish an attorney and refused to take a breathalyzer test. While police were obtaining a telephone warrant ordering a blood test, defendant consented to have a blood sample drawn at a nearby hospital. The test results showed a blood alcohol level of .16%. Defendant was thereafter indicted for the felony crimes of first degree vehicular manslaughter, criminally negligent homicide and two counts of second degree vehicular assault. He was also charged with the misdemeanors of operating a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (2) (blood alcohol level of .10% or more) and operating a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (3) (driving while intoxicated). Defendant was convicted of criminally negligent homicide and driving with a blood alcohol level of .10% or more and acquitted of the other charges. This appeal ensued.

Defendant contends that the written notice of oral statements made pursuant to CPL 710.30 provided to him at his arraignment did not have attached thereto written resumes of his oral statements. However, the inadequacy of the written notice does not require exclusion where, as here, the prosecutor orally supplied defendant with the sum and substance of his statements and defendant had a full opportunity to challenge the admissibility of such statements at a suppression hearing *(see, People v Brooks,* 121 AD2d 392; *People v Bennett,* 80 AD2d 68, 71, *affd* 56 NY2d 837). Moreover, here defendant was actually cognizant of the statements in time to meaningfully prepare for the hearing *(see, People v Nardo,* 153 AD2d 972; *see also, People v Rivera,* 53 NY2d 1005; *People v Cooper,* 158 AD2d 743).

Defendant also argues that the blood test results revealing his blood alcohol content were improperly admitted. Defendant initially declined several times to submit to breathalyzer tests after being warned of the consequences of refusal *(see,*

*People v Reynolds,* 133 AD2d 499, *lv denied* 70 NY2d 803; *People v Stisi,* 93 AD2d 951). He was informed that the police would seek a court order permitting blood to be taken against his will. Defendant indicated that he would submit to a court order. Thereafter, apparently on second thought, defendant changed his mind, approached a police officer who had previously advised defendant to consult with an attorney and, without further inquiry or prompting by the police officer, volunteered his consent to a blood test. We find ample support for County Court's factual determination that defendant voluntarily, knowingly and freely gave his consent to the blood test *(see, People v Verdile,* 119 AD2d 891).

Nor do we find error in the determination that the chain of custody of the blood sample was sufficiently established. Defendant argues that the chain was broken when the sample was left in an unlocked nonpolice refrigerator for two days. The blood sample was sealed in tubes and placed in a test kit, which was also sealed. The kit was left in a refrigerator in a municipal office from Saturday morning until Monday morning. Some municipal employees, but not the general public, had access to the refrigerator. The failure to establish a complete chain of custody may be excused where, as here, the circumstances provide a reasonable assurance of the identity and unchanged condition of the evidence *(see, People v Arthur,* 99 AD2d 595; *see also, Amaro v City of New York,* 40 NY2d 30, 35-36). Here, both the kit and tubes remained sealed with no indication of tampering when picked up by the police for delivery to the laboratory.

Defendant also argues that impermissible hearsay was permitted in the testimony of William Biggs, a police accident reconstruction expert who made general reference to a conversation with someone concerning what lane defendant was in when the accident occurred and to his own description of what he did thereafter. However, the content of this conversation was not disclosed nor did Biggs assert the contents of an unsworn statement as facts. We are equally unpersuaded by defendant's contention that the jury charge was prejudicial and unbalanced. County Court correctly indicated that the witnesses might be interested witnesses *(see, People v Hogue,* 139 AD2d 835; *see also, People v Alvarado,* 140 AD2d 446, *lv denied* 72 NY2d 915) and the court was well within its discretion in charging the indictment counts in the sequence handed up by the Grand Jury. Nor are we persuaded by defendant's next contention that the conviction is against the weight of the evidence. It is well established that the evidence

on appeal from a conviction must be viewed in a light most favorable to the People and it must be presumed that the jury credited the People's witnesses *(see, People v Malizia,* 62 NY2d 755, 757, *cert denied* 469 US 932; *People v Lyng,* 154 AD2d 787, *lv denied* 74 NY2d 950; *People v Scallero,* 122 AD2d 350). Our review of the record provides no basis to believe that the jury failed to properly weigh the evidence *(see, People v Bleakley,* 69 NY2d 490, *revg* 125 AD2d 687).

Finally, we note that defendant failed to preserve for our review the issue of repugnancy of the verdict. In cases tried before a jury, the objection must be raised before the jury is discharged *(see, People v Alfaro,* 66 NY2d 985; *see also, Gangi v Fradus,* 227 NY 452, 458-459). Defense counsel's posttrial affidavit offered for the first time on this appeal, containing a conclusory statement describing what allegedly occurred at an unrecorded sidebar prior to the jury's discharge, is insufficient to preserve the issue. The fact that the record does not contain minutes of the sidebar does not preclude alternate methods of providing an adequate substitute record *(see, People v Glass,* 43 NY2d 283, 286-287). We take note that the " 'mercy-dispensing power [of a jury] is * * * an inevitable consequence of the jury system' " *(People v Sullivan,* 68 NY2d 495, 501, quoting *People v Mussenden,* 308 NY 558, 562), even while not a legally sanctioned function of the jury and not encouraged by the courts *(see, People v Goetz,* 73 NY2d 751, *cert denied* 489 US 1053). A reviewing court is not required to second guess a counsel's trial strategies *(see, People v Bell,* 36 AD2d 406, 408, *affd* 29 NY2d 882), or the deliberations of the jury *(see, People v Boettcher,* 69 NY2d 174, 180) when the situation, as here, was readily curable prior to the discharge of the jury upon the making of a proper motion or objection, and we see no reason to reverse in the interest of justice.

Judgment affirmed. Mahoney, P. J., Weiss, Mikoll, Levine and Harvey, JJ., concur.