[12 NE3d 1099, 989 NYS2d 670]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JONAI WASHINGTON, Respondent.

Argued March 26, 2014; decided May 6, 2014

## POINTS OF COUNSEL

*Kathleen M. Rice, District Attorney*, Mineola (*Yael V. Levy* and *Tammy J. Smiley* of counsel), for appellant. The hearing court improperly suppressed the result of the chemical breathalyzer test, which defendant had already consented to take without seeking legal advice before counsel entered the matter under investigation. (*People v Shaw*, 72 NY2d 1032; *Schmerber v California*, 384 US 757; *People v Thomas*, 46 NY2d 100; *People v Berg*, 92 NY2d 701; *People v Hager*, 69 NY2d 141; *People v Paddock*, 29 NY2d 504; *People v Kates*, 53 NY2d 591; *Kirby v Illinois*, 406 US 682; *People v Claudio*, 59 NY2d 556; *People v Gursey*, 22 NY2d 224.)

*Law Offices of Frederick K. Brewington*, Hempstead (*Frederick K. Brewington* and *Jonathan I. Edelstein* of counsel), for respondent. The hearing court properly suppressed the result of the chemical breath test after the police unlawfully refused to allow counsel retained by the defendant's family to speak to her. (*People v Gursey*, 22 NY2d 224; *People v Garofolo*, 46 NY2d 592; *People v Donovan*, 13 NY2d 148; *People v Pinzon*, 44 NY2d 458; *People v Settles*, 46 NY2d 154; *People v Lopez*, 16 NY3d 375; *People v Harris*, 77 NY2d 434; *People v Grice*, 100 NY2d 318; *People v Gunner*, 15 NY2d 226; *People v Borukhova*, 89 AD3d 194.)

230

GRAFFEO, J.

*People v Gursey* (22 NY2d 224 [1968]) recognized that a defendant facing an alcohol-related motor vehicle charge has a limited, statutory right to request legal consultation before consenting to a chemical test. In this appeal, we consider the extent to which the police are obligated to advise a drunk driving suspect about an attorney's telephonic intervention before the administration of such a test.

Defendant Jonai Washington was driving an automobile in Nassau County at approximately 2:00 a.m. when she struck and killed a pedestrian. She told the responding police officers that she had consumed four beers "a while ago." She failed field sobriety tests and was arrested for driving while intoxicated at 2:40 a.m. Defendant was then transported to Nassau County police headquarters.

In the meantime, defendant's family contacted an attorney to arrange for him to represent her. The lawyer telephoned the Sheriff's Department at 3:29 a.m. and, shortly thereafter, an operator at police headquarters transferred his call at 3:32 a.m. to a sergeant. Counsel explained that he represented defendant, requested information about her status and asked the sergeant to instruct police officers not to question or test his client. The attorney was informed that he would be contacted by the arresting officer and the conversation ended at 3:39 a.m.

At the same time that the attorney was pursuing telephone contact with law enforcement personnel, the police were processing defendant and advising her about the need for a chemical test to determine her blood alcohol content. The police read a standard chemical test authorization to defendant at 3:30 a.m. and she then signed the form, indicating her consent to take the breathalyzer test. Defendant was not informed about the attorney's communication before initiation of the breathalyzer test at 3:39 a.m.

Consequently, defendant was indicted for second-degree manslaughter, second-degree vehicular manslaughter and two counts of driving while intoxicated. She moved to suppress the results of the breathalyzer, claiming that it had been administered in violation of her right to counsel. Following an evidentiary hearing, Supreme Court agreed with defendant and suppressed the chemical test results.

Upon the People's appeal, the Appellate Division affirmed, concluding that the police violated defendant's constitutional

right to counsel because she was not alerted to the lawyer's intervention before the breath test occurred and the People failed to establish that such notification would have unduly interfered with the administration of the breathalyzer (*see* 107 AD3d 4, 15 [2d Dept 2013]). A dissenting Justice believed that defendant's right to counsel was not transgressed since she had consented to the test prior to the attorney's conversation with the police (*see id.* at 25). The dissenter granted the People leave to appeal (21 NY3d 1012 [2013]).

Driving while intoxicated is "a very serious crime" (*County of Nassau v Canavan*, 1 NY3d 134, 140 [2003]) that has long posed a "menace" to highway safety (*People v Ward*, 307 NY 73, 77 [1954]) and has caused many tragic consequences (*see e.g. People v Heidgen*, 22 NY3d 259, 267-268 [2013]). In the effort to combat alcohol-related driving offenses, law enforcement agencies have been granted statutory authority (*see* Vehicle and Traffic Law § 1194) to use an important investigative tool—chemical tests to determine blood alcohol content (*see People v Smith*, 18 NY3d 544, 548 [2012]). Since alcohol metabolically dissipates from the bloodstream (*see Missouri v McNeely*, 569 US —, —, —, 133 S Ct 1552, 1560, 1570-1571 [2013]), the use of these tests "is a time-sensitive proposition; to maximize the probative value of BAC evidence, the police endeavor to administer chemical tests as close in time as possible to the motor vehicle infraction, typically within two hours of an arrest" (*People v Smith*, 18 NY3d at 548).

To promote this objective, operators of motor vehicles in New York are deemed to have issued consent to chemical testing under Vehicle and Traffic Law § 1194 (2) (a). The statute is designed to encourage those suspected of alcohol-related driving offenses to comply with requests to submit to chemical tests in order to obviate the need for securing court orders authorizing blood tests (*see* L 1953, ch 854; *People v Ward*, 307 NY at 77). Section 1194 "grants a motorist a qualified right to decline to voluntarily take a chemical test" after being warned that a refusal "will result in the immediate suspension and ultimate revocation of the motorist's driver's license for one year," along with evidence of the refusal being admissible at any subsequent criminal trial (*People v Smith*, 18 NY3d at 548). In general, "an uncounseled waiver of the statutory right to refuse the test . . . provides no basis for suppressing the results" (*People v Shaw*, 72 NY2d 1032, 1034 [1988]).

In *People v Gursey* (22 NY2d 224 [1968]), however, we recognized a limited right of the accused to seek legal assistance

in alcohol-related driving cases. We held that, based on the warning procedure set forth in section 1194 (2) (b),

> "if a defendant arrested for driving while under the influence of alcohol asks to contact an attorney before responding to a request to take a chemical test, the police 'may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication' " (*People v Smith*, 18 NY3d at 549, quoting *People v Gursey*, 22 NY2d at 227).

Violation of this right to legal consultation generally requires suppression of the scientific evidence (*see People v Smith*, 18 NY3d at 550). Because time is of the essence in obtaining accurate chemical test evidence (*see id.* at 548 n 1), we further observed in *Gursey* that a suspect's communication with a lawyer regarding "the exercise of legal rights should not . . . extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses" (22 NY2d at 229).

It is therefore well established that "there is no absolute right to refuse to take the test until an attorney is actually consulted, nor can a defendant use a request for legal consultation to significantly postpone testing" (*People v Smith*, 18 NY3d at 549). In other words, conferring with counsel is permissible only if " 'such access does not interfere unduly' " with timely administration of the test (*id.* at 549, quoting *People v Gursey*, 22 NY2d at 227).

We have at least twice emphasized that *Gursey* was directed at the accused's personal request to seek legal consultation before providing consent to a chemical test (*see People v Smith*, 18 NY3d at 549; *People v Shaw*, 72 NY2d at 1033-1034). *Gursey* is therefore distinguishable from the facts of this case in one significant respect—defendant never asked to speak to a lawyer before executing the consent form to take the breathalyzer test. Here, an attorney contacted the police at her family's behest at the same time that defendant agreed to undergo chemical testing. The issue then is whether counsel's intervention just prior to commencement of testing requires suppression of the results under these facts.

The People assert that suppression of the breathalyzer test is not warranted because defense counsel's telephonic communication

did not constitutionally preclude the police from continuing to proceed with testing defendant for alcohol consumption. They also maintain that the breathalyzer was properly performed under *People v Gursey* (22 NY2d 224 [1968]) because defendant did not personally inform the police that she wanted to consult with a lawyer before providing consent to the chemical test. Defendant acknowledges that her consent to be tested for alcohol was validly obtained, but asserts that her right to counsel was violated when the attorney contacted the police and she was not advised about the lawyer's communication before the breathalyzer test was performed.

In our view, the statutory right to legal consultation applies when an attorney contacts the police before a chemical test for alcohol is performed and the police must alert the subject to the presence of counsel, whether the contact is made in person or telephonically. *Gursey* contemplated that a lawyer retained to represent a DWI arrestee can directly communicate with the police, reasoning that "law enforcement officials may not, without justification, prevent access between the criminal accused and [the] lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly" with the administration of the alcohol test (22 NY2d at 227). The fact that defendant consented to the breathalyzer about the same time that the attorney was communicating with the police is not dispositive since defendant, after conferring with counsel, could have revoked her consent prior to administration of the test (*see generally* Vehicle and Traffic Law §§ 1194 [2] [b]; 1194-a [3] [c]). The police therefore must advise the accused that a lawyer has made contact on the accused's behalf (*see People v Pfahler*, 179 AD2d 1062 [4th Dept 1992]; *People v Meytin*, 30 Misc 3d 128[A], 2010 NY Slip Op 52276[U] [App Term, 1st Dept 2010], *lv denied* 16 NY3d 861 [2011]). Once so informed, the accused may choose to consult with counsel or forgo that option and proceed with the chemical test.[1]

---

**1.** Our dissenting colleagues would restrict the *Gursey* privilege to the time period before a drunk-driving suspect consents to a chemical test (*see* dissenting op at 237). The rationale of *People v Gursey* (22 NY2d 224 [1968]), however, was not so limited. A suspect who consents to a test may ultimately decline to perform it; only that final decision results in adverse legal consequences, such as revocation of driving privileges (*see* Vehicle and Traffic Law § 1194 [2] [b] [1]); and our Court has recognized that an arrestee may seek legal counsel to understand the ramifications of refusing to undergo chemical testing (*see People v Gursey*, 22 NY2d at 228-229). Contrary to the dissent's

In this case, when the attorney telephoned the police to intervene on defendant's behalf, the police should have informed defendant of this development since breathalyzer testing had not yet begun. Defendant could then have decided if she wished to discuss her situation with counsel. Since the police officers here made no effort to advise defendant about the lawyer's communication and the People did not demonstrate that a notification of this nature would have been unreasonable under the circumstances, we hold that the chemical test was administered in violation of the statutorily-based *Gursey* right to counsel. Consequently, the courts below correctly concluded that defendant is entitled to suppression of the test results.[2]

Accordingly, the order of the Appellate Division should be affirmed.

READ, J. (dissenting). The majority holds that "the statutory right to legal consultation applies when an attorney contacts the police before a chemical test for alcohol is performed and the police must alert the subject to the presence of counsel, whether the contact is made in person or telephonically" (majority op at 233). Further, the majority opines, it makes no difference "that defendant consented to the breathalyzer about the same time[*] that the attorney was communicating with the police . . . since [she] . . . could have revoked her consent prior to administration of the test" (*id.*).

Contrary to the majority's view, no statute confers upon a suspected drunk driver the legal right to consult with counsel before consenting to take a chemical breath test. And the ma-

---

belief, there is no relevant distinction between legal consultation before or after consent is given—the operative point in time is the actual performance of the procedure and, until it occurs, legal assistance may be sought "if such access does not interfere unduly" with the administration of the chemical test (*id.* at 227).

**2.** Although the People assert that the exclusionary rule should not apply in this case, it is unnecessary to address the merits of that claim because the courts below did not find that the police acted in good faith and it is undisputed that they did not obtain a court order authorizing a chemical test.

*. Record evidence shows the following: defendant signed the testing authorization form at 3:30 a.m.; the attorney called directory assistance at 3:27 a.m. (the call lasted one minute and 12 seconds); he called the sheriff's department at 3:29 a.m. (the call lasted 15 seconds); he called directory assistance again at 3:30 a.m., and at 3:31 a.m., he spoke to the switchboard operator at police headquarters, and at 3:32 a.m., his call was transferred to a police sergeant; the call lasted nine minutes and two seconds (i.e., beginning with the call to directory assistance at 3:30 a.m. and ending at 3:39 a.m.); and defendant's breath was "withdrawn" at 3:39 a.m.

jority offers no reason why we should alter the easy-to-apply common-law rule deriving from *People v Gursey* (22 NY2d 224 [1968]); i.e., that "a defendant who has been arrested for driving while intoxicated, but not yet formally charged in court, generally has the right to consult with a lawyer *before deciding whether to consent* to a sobriety test, *if he requests* assistance of counsel" (*People v Shaw*, 72 NY2d 1032, 1033-1034 [1988] [emphases added], citing *Gursey*, 22 NY2d 224). Accordingly, I respectfully dissent.

## I.

In *Gursey*, a motorist suspected of drunk driving was taken back to the station house where he was asked to submit to a chemical breath test; he refused and several times requested permission to call his attorney. The police officer in charge advised the uncooperative motorist that he had to take the test. When the motorist questioned what would happen if he continued to refuse consent, the officer replied " '[T]he State will take away your license,' " whereupon the motorist submitted to the test (*id.* at 227).

The motorist unsuccessfully moved to suppress the test results on the ground that administration of the test after denial of his requests for counsel violated his Fifth and Sixth Amendment rights. He was subsequently convicted of driving while intoxicated. On appeal, the Appellate Term ruled that "the denial of [the motorist's] request to telephone his attorney before he took the test violated his constitutional rights" (*id.* at 227 [internal quotation marks omitted]). The court therefore reversed the judgment of conviction and ordered a new trial in light of the "sufficient other evidence" of guilt (*id.* at 226).

We affirmed, but not on the basis of any constitutional or statutory right to advice of counsel enjoyed by a suspected drunk driver asked to undergo chemical breath testing. We noted that the motorist "possessed a number of *statutory options* which could be asserted only during the transaction at the station house, and *concerning which the advice of counsel, if available, was relevant*" (*id.* at 228 [emphases added]); specifically, he might have chosen to lose his license in lieu of taking the test (*see* former Vehicle and Traffic Law § 1194 [1]). Further, the motorist, if he elected to take the test, was entitled to have a physician of his choosing conduct a chemical test in addition to the police-administered one (*see* former Vehicle and Traffic Law § 1194 [4]).

Observing additionally that honoring the motorist's wishes "would not have substantially interfered with the investigative

procedure," we held that denial of his requests to talk to his lawyer "must be deemed to have violated" what we called "his privilege of access to counsel" (*id.* at 228) or "[t]he privilege of consulting with counsel concerning the exercise of legal rights" under Vehicle and Traffic Law § 1194 (*id.* at 229). We subsequently confirmed that this privilege is triggered only "if [a motorist] *requests* assistance of counsel" and does so "*before deciding whether to consent* to a sobriety test" (*Shaw*, 72 NY2d at 1034 [emphases added]). We have recently reiterated that the privilege is invoked "*before responding to a request* to take a chemical test" (*People v Smith*, 18 NY3d 544, 549 [2012] [emphasis added]).

## II.

While section 1194 contemplates that a motorist may refuse to take a chemical breath test, there is no "statutory right to request legal consultation before consenting to a chemical test" administered pursuant to that provision (*see* majority op at 230; *see also id.* at 233). The limited privilege to consult derives solely from *Gursey* and so is entirely judge-made (*see Gursey*, 22 NY2d 224; *see also Smith*, 18 NY3d at 549 ["Vehicle and Traffic Law § 1194 does not address whether a motorist has a right to consult with a lawyer prior to determining whether to consent to chemical testing. However, if the motorist is arrested for driving while intoxicated or a related offense, this Court has recognized a limited right to counsel associated with the criminal proceeding"]).

As the majority acknowledges, "[d]riving while intoxicated is a very serious crime that has long posed a menace to highway safety and has caused many tragic consequences" (majority op at 231 [internal quotation marks and citations omitted]). Here, defendant struck and killed a pedestrian. Given the undeniable scourge of drunk driving, we should not extend the reach of *Gursey*'s judicially-created privilege absent strong competing reasons of public policy, and none are advanced or apparent.

Additionally, expansion of the *Gursey* privilege is particularly ill-advised since the legislature enacted the " 'right' of refusal . . . merely [as] an accommodation to avoid a distasteful struggle to forcibly" administer a chemical test to an unwilling subject, not to protect drunk driving suspects from the risk of supplying incriminating evidence (*People v Paddock*, 29 NY2d 504, 506 [1971, Jasen, J., concurring]; *see also* Jack B. Weinstein, *Statute Compelling Submission to a Chemical Test for*

*Intoxication*, 45 J Crim L Criminology & Police Sci 541, 543 [1954-1955], available at http://scholarlycommons.law. northwestern.edu/cgi/viewcontent.cgi?article=4303&context=jclc [noting the "sound practical reasons" for the legislature's decision to provide that "although the driver has constructively consented to take the test, when the chips are down and he is actually apprehended he may renege on his imputed promise and refuse . . . (although) (s)uch a refusal is costly for it will result in the loss of his driver's license or nonresident operating privilege"]).

The majority seemingly reasons that it should make no difference whether the motorist asks to speak to the lawyer or vice versa before the test is performed. As a practical matter, though, the majority's enlargement of the *Gursey* privilege invites debate and thus uncertainty, especially when the attorney telephones rather than physically appears at the police station. In short, we are trading a limited and clear rule for a broader one bound to complicate and delay time-sensitive testing and generate questions of fact anytime an attorney enters a case, even when the defendant has already agreed to take the chemical test. This is evident here where, by any measure, mere minutes separate the attorney's first contact with the police from defendant's consent to the chemical breath test and the actual testing.

And even assuming it made sense to extend *Gursey*, there is no reason why the privilege should attach so long as the attorney asks to speak to the motorist before the chemical test is administered, as the majority holds, rather than before the motorist consents. The rationale for the privilege in *Gursey* was that counsel's advice was relevant to the motorist's decision whether to consent to the test in the first place. The majority posits that defendant might have revoked consent after talking to her attorney, citing Vehicle and Traffic Law §§ 1194 (2) (b) and 1194-a (3) (c). But these provisions address consequences of refusal to undergo a chemical test, not revocation of consent once freely given, as it concededly was here. Moreover, the majority does not explain why defendant's consent did not act as a waiver of any *Gursey* privilege. We have, after all, held that a motorist's statutory option to refuse a chemical test "may be waived without an attorney's assistance" (*Shaw*, 72 NY2d at 1033).

## III.

In *Gursey*, we created a limited privilege for a motorist suspected of drunk driving to request to consult with counsel

before consenting to chemical testing. Expanding this privilege to cover the situation where the motorist has not asked for counsel or resisted testing disserves the legislative purpose animating section 1194 (2) (b); namely, to encourage voluntary participation in chemical testing, a measure shown to have "cut drunken driving drastically" (*see* Letter from Jack B. Weinstein, Counsel to NY Senate, to George M. Shapiro, Counsel to Governor, Mar. 26, 1953, Bill Jacket, L 1953, ch 854 at 35-36).

Chief Judge LIPPMAN and Judges PIGOTT and RIVERA concur with Judge GRAFFEO; Judge READ dissents in an opinion in which Judges SMITH and ABDUS-SALAAM concur.

Order affirmed.