People v Odum (2018 NY Slip Op 03173)

People v Odum

2018 NY Slip Op 03173 [31 NY3d 344] 

May 3, 2018

Stein, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 8, 2018

[*1]

The People of the State of New York, Appellant,
v
Donald Odum, Respondent.

Argued March 27, 2018; decided May 3, 2018

People v Odum, 54 Misc 3d 128(A), 2016 NY Slip Op 51806(U), affirmed.

 {**31 NY3d at 346} OPINION OF THE COURT

Stein, J.

Vehicle and Traffic Law §§ 1194 and 1195 generally govern the administration and admissibility of chemical breath tests used to determine blood alcohol content. Section 1195 (1) provides that the results of such tests are admissible in evidence at a criminal trial if the tests are "administered pursuant to the provisions of section [1194]." The results of a test also may be admissible absent compliance with section 1194 where a defendant has voluntarily consented to the test because section "1194 . . . ha[s] no application where the defendant expressly and voluntarily consented to a [chemical] test" (People v Atkins, 85 NY2d 1007, 1008 [1995]). Here, because the breathalyzer test was not administered in accordance with the requirements of section 1194 and defendant's consent to take the test was not voluntary, as required by Atkins, the results of the test were properly suppressed.
I.
In 2014, defendant was arrested on various charges, including operating a motor vehicle while under the influence of alcohol. More than two hours after his arrest, he was informed that police wanted him to take a breathalyzer test and was asked whether he would "take this test? Yes or no?" After defendant answered "No," he was given the "refusal warnings" set forth in Vehicle and Traffic Law § 1194—namely, he was warned that, if he [*2]refused "to submit to the test," the result would be "the immediate suspension or subsequent revocation of [his] driver's license or operating privileges whether or not [he was] found guilty of the charges for which [he had] been arrested." In addition, he was warned—inaccurately—that if he "refuse[d] to submit to the test or any portion thereof, it w[ould] be introduced as evidence against [him] in any trial proceeding resulting from the arrest." Defendant then agreed to take the test and provided a breath sample, which showed that his blood alcohol level was above the legal limit.
Defendant subsequently moved to suppress the videotaped recording of the administration of the breathalyzer test, the test results, and all statements that he made to the arresting officer, including his initial refusal to take the test. Defendant asserted that, pursuant to Vehicle and Traffic Law § 1194, because more than two hours had passed between the time of his arrest and the request that he take the breathalyzer test, the officer administering the test should not have advised him{**31 NY3d at 347} that, if he refused to take it, his driver's license would be suspended and the refusal could be used against him in court. Defendant maintained that the refusal warnings were inappropriate after two hours, and rendered his consent to the test involuntary. Criminal Court, adopting a Judicial Hearing Officer's decision, granted the motion to suppress both defendant's initial refusal to take the test and the test results. The court ruled that, "[i]n light of the uncontradicted evidence that the refusal occurred more than two hours after arrest, suppression of the refusal is warranted." The court further concluded that the breathalyzer test results should have been suppressed because "the warnings given by the police were coercive."
The People moved to reargue, asserting that, although the refusal "warnings were most certainly designed to induce submission to the test [and] [i]t is undisputed that they do threaten the operator-accused with adverse consequences [for refusal] to consent," the warnings do not render a driver's consent involuntary because they merely inform the driver of the privilege that may be lost due to refusal, and that the refusal can be used against the driver in any subsequent legal proceedings. Criminal Court denied the motion to reargue, concluding that under Atkins, "where the chemical test is administered more than two hours after an arrest, admissibility of the results requires that the People show that consent was express and voluntary." The court then held that the People failed to meet their burden of demonstrating that defendant's consent was "voluntary and not the result of coercive conduct by the officer" because defendant consented "only after [the officer] gave the improper warnings."
Upon the People's appeal, the Appellate Term, First Department affirmed, holding that Criminal Court "properly suppressed the breathalyzer test results" because defendant's consent, given in response to "inappropriate warnings," was involuntary (54 Misc 3d 128[A], 2016 NY Slip Op 51806[U], *1 [App Term, 1st Dept 2016]). A Judge of this Court thereafter granted the People leave to appeal (29 NY3d 1084 [2017]).
II.
In order to combat driving while intoxicated, which we have long recognized as a "menace" (People v Ward, 307 NY 73, 77 [1954]), "law enforcement agencies have been granted statutory authority (see Vehicle and Traffic Law § 1194) to use an important investigative tool—chemical tests to determine blood alcohol content" (People v Washington, 23 NY3d 228, 231{**31 NY3d at 348} [2014]). As relevant here, Vehicle and Traffic Law § 1194 (2) (a) (1)—the "deemed consent provision"—states:
"Any person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test . . . for the purpose of determining the alcoholic and/or drug content of the blood provided that such test is administered by or at the direction of a police officer . . .
"having reasonable grounds to believe such person to have been operating in violation of any subdivision of section [1192] of this article and within two hours after such person has been placed under arrest for any such violation" (emphasis added).
Section 1194 (2) (b) (1) provides that the test shall not be given if a person who is under arrest and who has "been informed that the person's license . . . shall be immediately suspended and subsequently revoked, . . . whether or not the person is found guilty of the charge for which such person is arrested or detained," nevertheless "refuses to submit to such chemical test." "Evidence of a refusal to submit to such chemical test . . . shall be admissible" at trial, "upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal" (id. § 1194 [2] [f]).
[*3]This Court has explained that "[s]ection 1194 'grants a motorist a qualified right to decline to voluntarily take a chemical test' after being warned that a refusal 'will result in the immediate suspension and ultimate revocation of the motorist's driver's license for one year,' along with evidence of the refusal being admissible at any subsequent criminal trial" (Washington, 23 NY3d at 231, quoting People v Smith, 18 NY3d 544, 548 [2012]). The statute "is designed to encourage those suspected of alcohol-related driving offenses to comply with requests to submit to chemical tests in order to obviate the need for securing court orders authorizing blood tests" (Washington, 23 NY3d at 231; see also Sponsor's Mem, Bill Jacket, L 1968, ch 85), or " 'the need for the use of force by police officers if an individual in a drunken condition should refuse to submit to the test' " (People v Kates, 53 NY2d 591, 596 [1981], quoting Interim Rep of NY St Joint Legis Comm on Motor Veh Problems, 1953 NY Legis Doc No. 25 at 35). In that regard, we have repeatedly stated that "there is no constitutional right to avoid submitting to a chemical test of this nature" (Smith, 18 NY3d at 548; 
Kates,{**31 NY3d at 349} 53 NY2d at 594-595; People v Thomas, 46 NY2d 100, 109 [1978], appeal dismissed 444 US 891 [1979]; see also Birchfield v North Dakota, 579 US &mdash, &mdash, 136 S Ct 2160, 2184 [2016] ["the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving"]).
At the same time, however, nothing prevents the legislature from granting accused motorists a statutory right to decline the test or from placing limits on the authority of the police to administer the test absent voluntary consent—and that is precisely what the legislature has done. Specifically, while the statute is designed to compel compliance, it also sets express limits on police authority to perform the breathalyzer test when, due to the absence of express and voluntary consent (see Atkins, 85 NY2d at 1008), they must rely on a motorist's "deemed consent" under Vehicle and Traffic Law § 1194 (2) (a).[FN1] Those limits, which we cannot simply dismiss as meaningless, include the requirement that the test be performed within two hours. To be sure, we have clarified that the "two-hour limitation" [*4]is not "an absolute rule of relevance, proscribing admission of the results of any chemical test administered after that period regardless of the nature of the driver's consent" (Atkins, 85 NY2d at 1009 [emphasis added]; see People v Finnegan, 85 NY2d 53, 59 [1995], cert denied 516 US 919 [1995]; People v McGrath, 135 AD2d 60, 62 [2d Dept 1988], affd for reasons stated below 73 NY2d 826 [1988]). Nevertheless, we contemporaneously{**31 NY3d at 350} instructed that the statute "mandates that the breathalyzer test be performed within a two-hour time period following arrest" when the test is conducted pursuant to the deemed consent provision of section 1194 (2) (a) (People v Finnegan, 85 NY2d 53, 59 [1995] [emphasis added]).
III.
Here, because the breathalyzer test was not performed within two hours of defendant's arrest, and the requirements necessary to obtain a court order pursuant to Vehicle and Traffic Law § 1194 (3) were not met, the test results were not admissible under the statutory scheme (see Vehicle and Traffic Law § 1195 [1]; see also Smith, 18 NY3d at 550-551 [holding that, absent compliance with the statute, even evidence of a refusal must be suppressed]). Nevertheless, as Atkins instructs, the test results may still be admissible if defendant voluntarily consented to take the test because "the two-hour limitation . . . has no application" when the "defendant [has] expressly and voluntarily consented to administration of the [breath] test" (85 NY2d at 1009; see Smith, 18 NY3d at 548 n 1).[FN2] The issue before us, then, is whether defendant gave his voluntary consent to the administration of the test, which generally presents a mixed question of law and fact (see e.g. People v Mercado, 25 NY3d 936, 937 [2015]). However, it is undisputed that defendant expressly consented only after the expiration of the two-hour period and after being warned about the consequences of failing to do so; the parties' dispute here turns on whether the warnings were legally accurate and, consequently, whether his consent was voluntary (compare People v Skardinski, 24 AD3d 1207, 1208 [4th Dept 2005] [police warning that{**31 NY3d at 351} defendant's driver's license would be suspended if she did not submit to chemical test incorrect where defendant had not yet been arrested], with People v Slater, 166 AD2d 828 [3d Dept 1990], lv denied 76 NY2d 1024 [1990] [consent voluntary where police warned the defendant that, if he did not consent, they would obtain a court order permitting blood to be taken against his will]; see Birchfield, 579 US at &mdash, 136 S Ct at 2186 [remand to reevaluate voluntariness of consent where officer's advisory that law required submission to a blood test was rendered inaccurate by Supreme Court's decision]; see also Thomas, 46 NY2d at 107 ["(c)ompulsion . . . may . . . be accomplished by the State's attaching to the alternative course of action a penalty, [*5]punishment or detriment for the imposition of which no other justification exists and of which the defendant is therefore entitled to be free"]). We conclude that, because more than two hours had passed since defendant's arrest, the warning that evidence of his refusal to take the breathalyzer test would be admissible at trial was inaccurate as a matter of law and, therefore, the record supports the conclusion of the courts below that his consent to the test was involuntary.
As previously noted, evidence of a refusal to take a breathalyzer test is admissible at trial pursuant to Vehicle and Traffic Law § 1194 (2) (f). Although there is no time limit expressly set forth in section 1194 (2) (f), that provision refers directly back to the chemical test authorized in subdivision (2) (a). Specifically, section 1194 (2) (f) states that it is "[e]vidence of a refusal to submit to such chemical test" that is admissible at trial (emphasis added), with "such chemical test" being the one to which a defendant is deemed to have consented in subdivision (2) (a). In other words, the use of the word "such" in section 1194 (2) (f) ties that provision back to subdivision (2) (a)—a different paragraph within the same subdivision—so that the two must be read together (see McKinney's Cons Laws of NY, Book 1, Statutes § 97, Comment at 213-214, 216 [1971 ed] ["(W)ords, phrases, and sentences of a statutory section should be interpreted with reference to the scheme of the entire section . . . and the meaning of a single section may not be determined by splitting it up into several parts"]). Section 1194 (2) (a) (1) provides, in turn, that a defendant is "deemed to have given consent to a chemical [breath] test," so long as the test is performed "within two hours after such person has been placed under arrest for" driving while intoxicated. Inasmuch as "such chemical test" is no longer authorized under the deemed {**31 NY3d at 352}consent provision in section 1194 (2) (a) after the two-hour period has expired, the motorist cannot, as a matter of law, refuse to take the test within the meaning of section 1194 (2) (f).[FN3] Any evidence of a refusal after that point must be suppressed because it does not fall within the parameters of the statute (see Smith, 18 NY3d at 550-551).
Our interpretation of Vehicle and Traffic Law § 1194 (2) (f) is supported by that provision's legislative history. As defendant notes, when the deemed consent provision was first enacted in 1953 as section 71-a of the Vehicle and Traffic Law, motorists had an absolute right to refuse the test—subject only to immediate license revocation (see Kates, 53 NY2d at 596)—and evidence of a refusal to take the test was never admissible (see People v Paddock, 29 NY2d 504 [1971]; People v Stratton, 1 NY2d 664 [1956], affg 286 App Div 323 [3d Dept 1955]). Therefore, at the time the warnings were added to the statute, voluntariness was not a concern because a refusal could not be used against a defendant at trial. Indeed, the legislature noted that "[t]he proposal [to add the warning language] would not affect any subsequent criminal proceedings on the charge for which arrested, since it specifically applies only to revocations for refusal to consent to the chemical test" (Sponsor's Mem, Bill Jacket, L 1968, ch 85 at 2 [emphasis added]).
[*6]The statute was not amended to permit evidence of a refusal at trial until 1973, in response to a concurring opinion by Judge Jasen in Paddock (see Sponsor's Mem, Bill Jacket, L 1973, ch 351). In his concurrence, Judge Jasen urged the legislature to amend the statute to permit evidence of refusals because "there is no constitutional right to refuse to submit to such a test, [and] it necessarily follows that there can be no constitutional prohibitions to prevent comment upon the accused's failure to take the test" (Paddock, 29 NY2d at 505 [Jasen, J., concurring];{**31 NY3d at 353} see Sponsor's Mem at 2, Bill Jacket, L 1973, ch 351 [noting that "the prohibition on commenting on the refusal to take the test is strictly statutory"]). Given the previously well-established rule that evidence of a refusal was inadmissible, the 1973 amendment was in derogation of common law. Therefore, it should be strictly construed (see Rust v Reyer, 91 NY2d 355, 360 [1998]; see also McKinney's Cons Laws of NY, Book 1, Statutes § 304), further supporting an interpretation of the statute that would apply the two-hour limitation in Vehicle and Traffic Law § 1194 (2) (a) to the evidentiary provision in Vehicle and Traffic Law § 1194 (2) (f).
Finally, although we agree with the Appellate Term's conclusion that the warning pertaining to the admissibility of defendant's refusal was legally inaccurate and, therefore, inappropriate, we note again, as Judge Jasen did in his concurrence in Paddock, that the rights asserted by defendant here—insofar as they relate to breath tests—are statutory, not constitutional (see Smith, 18 NY3d at 548; Kates, 53 NY2d at 594-595; Thomas, 46 NY2d at 109; Paddock, 29 NY2d at 505 [Jasen, J., concurring]). The legislature is free to amend the statute to clarify the scope of the statutory rights, particularly in light of the express clarification in Birchfield that warrantless breath tests are constitutionally permissible (579 US at &mdash, 136 S Ct at 2184). However, it is not for this Court, by judicial fiat, to strike the express protections that the legislature has provided to motorists in Vehicle and Traffic Law § 1194 (2) on the ground that those protections merely "set up arbitrary obstacles to . . . necessary evidence collection" (DiFiore, Ch. J., dissenting op at 
357).
In sum, because the warnings given to defendant were at least partially inaccurate—i.e., as to the admissibility at trial of his refusal to submit to testing—the courts below properly suppressed the results of the breathalyzer test on the ground that defendant's consent to take the test was involuntary. The People's remaining argument regarding the accuracy of the warning of license suspension—the crux of the dissent—is both irrelevant to our analysis and academic. Further, the People's argument concerning the admissibility of defendant's initial refusal to take the breathalyzer lacks merit inasmuch as defendant did not "persist[ ] in the refusal" (Vehicle and Traffic Law § 1194 [2] [f]).
Accordingly, the order of the Appellate Division should be affirmed.{**31 NY3d at 354}

Wilson, J. (concurring). I join the majority, but write separately because law enforcement officials must have clear rules as to what they may tell a motorist suspected of impaired driving. I agree with my dissenting colleagues that the license suspension warning that police gave Mr. Odum—that the Department of Motor Vehicles would suspend or revoke his [*7]license if he refused the test—was correct (see 2012 NY St Dept of Motor Vehicles Op No. 1-12 at 2). Providing that warning to motorists, even after expiration of the two-hour period, does not constitute coercion, and does not render their subsequent consent involuntarily given.

Chief Judge DiFiore (dissenting). In this case we are once again called to interpret an enigmatic statute as to its precise parameters in obtaining evidence for criminal prosecutions of intoxicated motorists. Specifically, we are asked to pick up where this Court left off in People v Atkins (85 NY2d 1007 [1995]), and answer whether the two-hour rule in Vehicle and Traffic Law § 1194 (2) (a), which governs the deemed consent scenario, nonetheless applies to the administration of refusal warnings to a motorist who thereafter expressly consents to a breath test more than two hours from arrest. Because the only interpretation consistent with the purpose of the statute, our precedent, and the record before us is that the statutory two-hour rule has no such applicability to the refusal warnings provided to the motorist who consents to a breath test, I respectfully dissent.
On October 18, 2014, during the early morning hours, officers were directed to a group of people who had witnessed the driver of a white Cadillac Escalade hit their parked vehicle a few minutes earlier. The group pointed the officers in the direction in which the driver had fled the scene, and within approximately 10 blocks, officers came upon the stopped white Escalade. The driver, the defendant herein, smelled of alcohol and was unsteady on his feet. Police arrested defendant at 3:12 a.m., transported him to the police precinct and, once there, advised him of his Miranda rights. Following questioning, and more than two hours from arrest, at approximately 5:50 a.m., an officer asked defendant, "Will you take this [breath] test?" Initially, defendant said no. The officer warned defendant that if he did not take the test, his license would be suspended and{**31 NY3d at 355} his refusal would be used against him as evidence in court.[FN1] Defendant consented and provided the breath test, which measured his blood alcohol content (BAC) at .09%—above the legal limit.
Defendant was charged with reckless endangerment in the second degree, reckless driving, and three counts of operating a motor vehicle while under the influence of alcohol. Defendant moved to suppress the results of the breath test on the allegation that the police unlawfully arrested him. During the suppression hearing, defendant continued to [*8]argue that the test results were inadmissible as the result of an unlawful seizure of his person,[FN2] but in closing arguments also argued that the suppression court was bound by People v Rosa (112 AD3d 551 [1st Dept 2013]), wherein the intermediate appellate court in finding the defendant's consent to the chemical test voluntary, stated that when more than two hours pass from arrest, a defendant should not be warned that if he refuses to take a breath test, his driver's license will be suspended and the refusal can be used against him in court (id. at 552). The People disagreed with the effect of the dicta in Rosa and relied on a Department of Motor Vehicles (DMV) change in policy since the 2011 conviction in Rosa, allowing the agency to revoke licenses where a refusal fell outside the two-hour rule. Both the judicial hearing officer and nisi prius agreed they were bound by the precedent of Rosa, and suppressed the evidence of the chemical test.
On appeal to this Court, the crux of defendant's argument is that because the refusal warnings given to him were based on allegedly erroneous information—namely that the DMV had the authority to revoke defendant's license under the circumstances—his consent following those warnings was coerced. However, based on the undisputed evidence in the hearing record,{**31 NY3d at 356} the refusal warnings were not a misapplication of law at all. During the suppression hearing, the most decisive period in this case's history, the People argued that Rosa was inapplicable because DMV policy had changed since the facts underlying that case. In 2012, the DMV amended its policy to allow revocation or suspension of a motorist's license for refusing to submit to a breath test, even if such refusal is given more than two hours from arrest (see 2012 NY St Dept of Motor Vehicles Op No. 1-12 at 2). Defendant never once challenged the People's assertion that the controlling refusal warnings as amended by DMV policy were correct as a matter of fact and law, and that defendant's consent was not coerced due to those warnings and must be accepted as voluntary (see People v Graham, 25 NY3d 994, 996 [2015]). Voluntariness of consent to a search is a question of fact to be determined by the surrounding circumstances (see People v Gonzalez, 39 NY2d 122, 124 [1976]; Schneckloth v Bustamonte, 412 US 218, 227 [1973]) and we are bound by the factual record before the hearing court (see People v Wheeler, 2 NY3d 370, 373 [2004]). Because it was undisputed that the DMV changed its policy to allow revocation of a license in the event a breath test is refused more than two hours after the arrest—and defendant never challenged that legal authority—our inquiry into alleged coerciveness as a result of the warnings given ends. The majority cannot simply sidestep the fact that defendant in the trial court never disputed the DMV's authority in this area and thus conceded the accuracy of the DMV warnings leading to his consent, allowing the People's legal argument before that court to stand without contradiction.
The cooperation of a licensed motorist in submitting to a chemical test upon arrest for driving while under the influence of alcohol is necessary for the successful administration of a breath test, thus prompting all 50 states to enact "implied consent" laws to secure that cooperation from motorists as a condition of their license to drive on the public highways (see Birchfield v North Dakota, 579 US &mdash, &mdash, 136 S Ct 2160, 2168-2169 [2016]). As a pioneer in combating the growing menace of drunk driving since the middle of the last century, New York designed the nation's first deemed consent law to set up a paradigm for evidence collection by providing that the privilege of driving required submission to a chemical test under penalty of a revocation of the license (see Interim Rep of NY St Joint Legis Comm on Motor Veh Problems, 1953 NY Legis Doc No.{**31 NY3d at 357} 25 at 11-18). The sole purpose of the statute, now [*9]section 1194, is compulsory submissions to chemical tests from motorists. It is an evidence gathering measure specifically created by the legislature in recognition of the basic difficulty of proving the BAC of drivers at trial without such tests (see id. at 12-13). For that reason, the legislature did not—and this Court has never until today—set up arbitrary obstacles to this necessary evidence collection (see People v Ward, 307 NY 73, 77 [1954] ["(T)he Committee's purpose, obviously, was neither to circumscribe nor limit the use of such tests in evidence"]).[FN3]
The legislative history provides no basis to expand the limitations of the two-hour rule, which is tethered only to the deemed consent scenario. Originally, the two-hour rule was an evidentiary standard concerned with probativeness (see L 1941, ch 726, eff July 1, 1941). Especially at the statute's inception, when technological advancements in this area were less developed, a prompt breath test was presumably a more accurate measurement of BAC (see People v Washington, 23 NY3d 228, 231 [2014]), the legal limit of which has since been reduced by nearly half. In purposely placing the two-hour rule in the section 1194 provisions devoted solely to evidence collection in deemed consent cases, as opposed to other section 1194 provisions or section 1195, governing evidence admissibility and its probative value, the legislature signaled the two-hour rule does not define either the admissibility or probative value of evidence taken on court order pursuant to section 1194 or upon express consent of the motorist (see Atkins, 85 NY2d at 1008-1009). Indeed, as modern breath test devices "can detect the {**31 NY3d at 358}presence of alcohol more quickly and accurately than before" and "are generally regarded as very reliable" (Birchfield, 579 US at &mdash, 136 S Ct at 2168), linking the probative value of the test to the passage of two hours is arbitrary as the BAC reading from the test alone determines its probativeness (see Vehicle and Traffic Law § 1195 [2]).
Contrary to the majority's resolution of the issue before us, the placement of two hours in the deemed consent provision was not meant to automatically suppress evidence of the circumstances surrounding requests of a motorist to expressly consent to a breath test because that would ignore both the general purpose and spirit of the statute, as well as our precedent. Instead, the intent was to temporally limit police in obtaining warrantless blood sample tests beyond two hours from unconscious or incapacitated drivers, a factual scenario existing at the time of enactment but now curtailed by Birchfield v North Dakota (see 579 US at &mdash, 136 S Ct at 2186; People v Kates, 53 NY2d 591, 595 [1981] ["(T)he history of the statute shows that the wording was carefully chosen with this situation in mind"]). In [*10]the scenario of an individual who can only be deemed to consent to a chemical test, a two-hour temporal parameter from the point of arrest for police to conduct compulsory tests was reasonable.
Moreover, to the extent the majority maintains this is somehow a refusal case (see majority op at 
347-349, 350-353) it is mistaken. This is a consent case with actual evidence of a breath test provided by the motorist. Under section 1194 (2) (f), a defendant's refusal—which is inextricably linked to the revocation of a license and more readily understood as a revocation of the deemed consent created by the legislature as a condition of a license grant—is admissible at trial "only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal" (Vehicle and Traffic Law § 1194 [2] [f] [emphasis added]). This evidence is the second legislative penalty of refusal to take the compelled test, the first being the penalty of a revocation of a license (see People v Thomas, 46 NY2d 100, 108 [1978], appeal dismissed 444 US 891 [1979]). The refusal is defined by the statute as one that must follow the giving of requisite warnings and one whereby a defendant persistently refuses to submit to a compulsory test. Then the evidence of the refusal is admitted pursuant to section 1194 (2) (f) as an inference of guilt. Obviously, refusal{**31 NY3d at 359} evidence is entirely superfluous when a defendant has consented to a breath test and the BAC results speak directly to the issue of guilt. Further, the position that advising defendant that his refusal could be used as evidence is somehow coercive is also without merit. As we have held, a motorist has no constitutional right to refuse, nor does a motorist enjoy an absolute right of refusal previously given by statute, making the majority's continued reliance on People v Paddock (29 NY2d 504 [1971]) misplaced (see 
majority op at 352, see also Thomas, 46 NY2d at 110 ["Inasmuch as that statutory right has now been modified . . . making evidence of refusal admissible, the decision( ) in . . . Paddock (is) no longer determinative"]).
Here, defendant did not contest the DMV's authority to revoke a license beyond the two-hour rule applicable in deemed consent scenarios. A motorist's right of refusal to take a chemical test is neither compelled nor constitutionally privileged, and the DMV's revocation policy is permissible as a condition of the license to drive. Accordingly, the evidence of that refusal is admissible under the general rule that all relevant evidence is admissible unless its admission violates some exclusionary rule (see People v Scarola, 71 NY2d 769, 777 [1988]; People v Berg, 92 NY2d 701, 706 [1999] ["(I)f evidence is constitutionally permissible, the absence of authorization in a statute does not make it impermissible"]; Thomas, 46 NY2d at 109 ["(D)efendant had no constitutional privilege or statutory right to refuse to take the test; hence comment on his refusal represents no infringement of privilege or right"]). As the warning of the consequences of a refusal in this case was legally accurate, a claim of coercion is unsound.
Here, the videotape demonstrated defendant was asked by the officer to take the test. He said no once. Officers then gave him the DMV refusal warning and defendant consented to take the breath test. Like any consent scenario, upon being asked to provide evidence by the police, defendant elected to take the breath test after being made aware of his options. Therefore, at bottom this is an express consent case and the consent was voluntary (compare Atkins, 85 NY2d at 1008, with People v Smith, 18 NY3d 544, 547 [2012]).
The statute clearly provides three different methods of obtaining compulsory breath tests depending on the different factual scenarios confronting police in encountering intoxicated motorists. To be sure, the first such compulsory test is the{**31 NY3d at 360} chemical field test, provided in the "field" and requiring no warnings or consent before its administration (see Vehicle and Traffic Law § 1194 [1] [b]). The statute also has always made the distinction between conscious drivers capable of cooperating and unconscious drivers or those too drunk to cooperate:
"In the case of an unconscious individual, a chemical test can be administered since he is deemed to have given his consent when he used the highway. It is not necessary that a person be given the opportunity to revoke his consent. The only reason the opportunity to revoke is given is to eliminate the need for the use of force by police officers if an individual in a drunken condition should refuse to submit to the test" (Interim Rep of NY St Joint Legis Comm on Motor Veh Problems, 1953 NY Legis Doc No. 25 at 35 [emphasis added]; see Kates, 53 NY2d at 595-596 [noting that the legislature deliberately distinguished between the conscious driver and the incapacitated driver]).
On that premise, the second compulsory test is provided in section 1194 (2) (a) and covers the deemed consent of motorists to submit to a demand for a chemical test under penalty of losing their license and [*11]incorporates the two-hour rule. A persistent refusal triggers section 1194 (2) (b) requiring a report of refusal to submit to a chemical test when a motorist revokes the statutory consent presumed from the license to drive. Lastly, the third compulsory test is set forth in section 1194 (3), which provides for a court order for a compulsory chemical test without any two-hour rule. By this statutory scheme, the refusal warnings in section 1194 (2) (b)—given to motorists who persist in revoking the deemed consent presumed to be given by any licensed driver—serve the purpose of alerting the driver to the consequences of blocking the compulsory method of evidence collection laid out in section 1194 (2) (a).
The two-hour rule, however, has no applicability outside the deemed consent scenario.[FN4] That sound explanation furthers the object, spirit, and purpose of the statute (see McKinney's Cons Laws of NY, Book 1, Statutes § 92), and is also compatible with our decades of precedent on this very subject. Indeed, we have long narrowed the applicability of the two-hour rule to the{**31 NY3d at 361} confines of deemed consent.[FN5] To be sure, in Atkins, we held that a defendant may provide express consent to undergo a chemical test at any time, thus rendering the two-hour requirement irrelevant (see 85 NY2d at 1009; see also Smith, 18 NY3d at 548 n 1 ["Although time is of the essence in obtaining chemical test evidence, if a defendant agrees to take the test, there is no per se statutory bar on admission of the results if the test was administered more than two hours after defendant's arrest" (emphasis added)]). Additionally, in People v McGrath, we affirmed the Appellate Division decision holding the two-hour rule inapplicable to section 1194 (3) on tests obtained by court orders (see 135 AD2d 60, 62 [2d Dept 1988], affd for reasons stated below 73 NY2d 826 [1988] ["Nothing in the unambiguous language of (section 1194 [2] [a]) indicates that the Legislature intended to impose a specific time limitation on the performance of court-ordered chemical tests. The omission of such a restriction reflects a rational legislative determination that it was unnecessary"]). Finally, in People v Finnegan (85 NY2d 53, 59 [1995]), we held "[n]othing in the unambiguous language of [the statute] indicates that the Legislature intended to cross-reference or incorporate" the two-hour rule to section 1194 (4) on independent physician tests. Therefore, we have already largely confined the statutory two-hour rule to the deemed consent scenario and nothing more.[FN6]
[*12]{**31 NY3d at 362}Here, the issue framed is the allegedly illegal seizure by police of the evidence of a breath test because it was taken without defendant's voluntary consent (see People v Kuhn, 33 NY2d 203, 208-209 [1973]). Particularly in light of Birchfield's holding that a warrantless breath test is a reasonable search incident to arrest within the meaning of the Fourth Amendment for intoxicated motorists, any issue of consent here is somewhat academic as one's consent is not required for a search and seizure (see 579 US at &mdash, 136 S Ct at 2184).[FN7] In any event, this is neither a deemed consent case nor a persistent refusal case—a distinction that has muddled this litigation at every stage. We are dealing instead with a defendant's cooperation in expressly consenting to take a breath test after being provided appropriate warnings of the consequences of his refusal to do so. We have held that the best practice for police is to warn defendants of options, as well as their right of refusal so that a defendant's decision to take a breath test is made knowingly and voluntarily (see Ward, 307 NY at 78). In this case, police asked defendant to take the breath test and [*13]provided the refusal warnings as explained in the DMV's revised policy, advising defendant that his license would be revoked even though more than two hours had passed since his arrest, and a refusal can be used as evidence against him. As a result, defendant made a choice and expressly consented to the breath test. Based on the record, the statute, and our precedent, the statutory two-hour rule does not apply to the administration of the refusal warnings given in such a scenario.{**31 NY3d at 363} Accordingly, the results of the breath test should not have been suppressed.
For those reasons, I dissent.
Judges Rivera, Wilson and Feinman concur, Judge Wilson in a concurring opinion; Chief Judge DiFiore dissents in an opinion in which Judges Fahey and Garcia concur.
Order affirmed.

Footnotes

Footnote 1:Contrary to the People's argument, as well as the conclusion of the Appellate Division, Second Department in People v Robinson (82 AD3d 1269, 1269 [2d Dept 2011], lv denied 17 NY3d 800 [2011]) and the dissenters, the applicability of the deemed consent provision in Vehicle and Traffic Law § 1194 (2) (a) (1) is not limited to those who are "incapable of consenting" or, as the dissent would have it, "unconscious or incapacitated drivers" (DiFiore, Ch. J., dissenting op at 
358). The statutory language itself provides that "[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test . . . within two hours after . . . arrest" (emphasis added). The relevant legislative history further clarifies that the deemed consent provision applies to any person "suspected of driving while under the influence of intoxicating liquors" (Sponsor's Mem, Bill Jacket, L 1953, ch 854 at 35). Finally, in Kates, this Court noted that the "general rule" is that any person operating a motor vehicle is deemed to have consented to such tests (53 NY2d at 595); we did not suggest that the deemed consent provision is limited to those who are unconscious or otherwise incapable of consent, and stated that the "exception" to the general rule contained in subdivision (2) "is only applicable when the driver refuses to consent" (id.). That is, the relevant statutory distinction between conscious and unconscious drivers is that only the former need be given the opportunity to revoke consent (see id. at 595-596).

Footnote 2:The fundamental flaw in the dissent's reasoning is its failure to recognize the distinction between consent that is merely "express" and consent that is both "express[ ] and voluntar[ ]y," as required by Atkins (85 NY2d at 1009; see DiFiore, Ch. J., dissenting op at 
358-361). We decline to minimize our prior decision in Atkins, including the voluntariness requirement, as "somewhat academic" (DiFiore, Ch. J., dissenting op at 
362) simply because the Supreme Court of the United States made express in Birchfield (579 US at &mdash, 136 S Ct at 2184) what this Court had recognized long before Atkins was decided—that the Fourth Amendment permits warrantless breath tests (see Kates, 53 NY2d at 594-595). Moreover, contrary to the People's arguments, Atkins does not imply that the two-hour rule is simply irrelevant or that, because a breath test obtained based on voluntary consent is admissible after two hours, a refusal is admissible as well. Rather, Atkins held only that the section 1194 (2) (a) is inapplicable when a defendant has voluntarily consented because that statute is concerned only with those " 'required to submit' " (id. at 1008, quoting Ward, 307 NY at 77).

Footnote 3:A truly holistic reading of the statute, taking into account its structure, further supports this interpretation. As relevant here, Vehicle and Traffic Law § 1194 authorizes police to seek two types of chemical tests—those based upon deemed consent under subdivision (2) and court-ordered tests under subdivision (3). Section 1194 (2) is a self-contained paragraph that refers only to the "such" chemical tests described therein, i.e., the chemical test to which a defendant is "deemed to have given consent" (id. § 1194 [2] [a]). Section 1194 (3), on the other hand applies to "[c]ompulsory chemical tests," which the statute defines as "[c]ourt ordered chemical tests" (id. § 1194 [3] [a]). The reference to "such chemical test[s]" in subdivision (3) refers to the compulsory, court-ordered tests addressed in that paragraph and does not operate to eliminate the two-hour requirement from subdivision (2), as the dissenters conclude (see DiFiore, Ch. J., dissenting op at 
361-362 n 6).

Footnote 1:The police officer's administration of the refusal warnings, defendant's consent to take the breath test, and the administration of the test were recorded on videotape and admitted into evidence.

Footnote 2:Under Vehicle and Traffic Law § 1195,
"[a] defendant who has been compelled to submit to a chemical test pursuant to the provisions of subdivision three of section [1194] of this article may move for the suppression of such evidence in accordance with article seven hundred ten of the criminal procedure law on the grounds that the order was obtained and the test administered in violation of the provisions of such subdivision or any other applicable law" (Vehicle and Traffic Law § 1195 [3] [emphasis added]; see CPL 710.20 [5]).
In this case, there was no subdivision (3) compulsory test, to wit a court order.
Footnote 3:The refusal warnings at issue in this case were meant to warn motorists of the consequences of refusing chemical tests. The effect of the majority's rule is to accelerate an already growing and alarming rate of refusals as they are without consequence, thus frustrating drunk driving prosecutions and fundamentally undermining the very purpose of the statute (see U.S. Department of Transportation National Highway Traffic Safety Administration Traffic Safety Facts, Namuswe et al., Breath Test Refusal Rates in the United States—2011 Update at 3 [DOT-HS-811-881, Mar. 2014]; Birchfield, 579 US at &mdash, 136 S Ct at 2169-2170). Further, contrary to the majority's assertion, the legislature intended section 1194 to compel evidence of drunk driving, rather than provide "protections" (see majority op at 
353) to motorists to avoid taking a breath test (see People v Thomas, 46 NY2d 100, 108 [1978], appeal dismissed 444 US 89 [1979] ["Submission to the test, not its evasion, was what was desired . . . by the Legislature in the enactment of section 1194"]). Our decision is not a "judicial fiat" but a construction of the statute based on the consideration of the mischief sought to be remedied by the law (see McKinney's Cons Laws of NY, Book 1, Statutes § 95), a remedy that fails when evidence lawfully obtained is suppressed for no logical reason.

Footnote 4:The two-hour rule exists on a sliding scale as it commences only at the time of arrest, which requires the police to take defendant into custody at some juncture.

Footnote 5:Relatedly, we have understood the impracticality of strict compliance with the statute. For example, in People v Goodell (79 NY2d 869 [1992]), we held that although the language of the statute provides that the chemical test to an unconscious motorist be administered within two hours after the motorist has been placed under arrest, to formally place an unconscious person under arrest would be "an empty gesture" (id. at 871).

Footnote 6:The majority makes much of the word "such" in referring to chemical tests in section 1194 (2) (f), arguing that this must incorporate the two-hour rule across the statute because it refers to "chemical test" as listed in section 1194 (2) (a) (see majority op at 
351-352). However, if the statute is truly to be read in a holistic way, giving purpose to the individual provisions and respect to the desired scheme of the legislature, then "such chemical test" cannot have the effect the majority suggests (see McKinney's Cons Laws of NY, Book 1, Statutes § 92, Comment at 184 and n 82; id. § 95, Comment at 196 and n 47, at 197 and n 48, at 200 and n 54; id. § 148, Comment at 304 and n 50; id. § 254, Comment at 418 and n 23 [1971 ed]). After all, section 1194 (3) also contains the phrase "such chemical test[s]," but we have previously determined the two-hour rule inapplicable to compulsory court orders (see McGrath, 73 NY2d 826). Instead, "such chemical test[s]" refers to the types of chemical tests specifically enumerated in section 1194 (2) (a) (i.e. breath, blood, urine, or saliva). Interpreting "such" to incorporate only the definition of "chemical tests," not the two-hour rule, harmonizes the statute while also fulfilling its legislative purpose (see Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81, 87 [1995] ["use of the term 'such' . . . serves as a grammatical echo for its immediate antecedent"]).

Footnote 7:There is no "fundamental flaw" in this reasoning and any confusion lies with the majority (see majority op at 
350 n 2). In short, the majority misunderstands the meaning of "consent" in "deemed consent." "Deemed consent" is not consent in the traditional sense at all—rather it is a "demand" to submit (see Interim Rep of NY St Joint Legis Comm on Motor Veh Problems, 1953 NY Legis Doc No. 25 at 35). Under a traditional consent analysis, voluntariness is both required and evaluated, which is our distinction when using the term "expressed consent" as opposed to one that is "deemed" (see Kates, 53 NY2d at 594). The majority makes its misunderstanding over this basic point clear by divorcing "express" consent from "voluntariness," but traditional—expressed—consent always requires voluntariness (see Gonzalez, 39 NY2d at 124). Because Birchfield now allows for warrantless breath tests as a search incident to arrest under the Fourth Amendment, traditional consent is no longer a factor—and that is why the majority's focus on voluntary consent is somewhat academic (see 579 US at &mdash, 136 S Ct at 2185).