OPINION OF THE COURT
Seymour Rotker, J.
The defendant has been charged by an eight-count indictment filed on November 24, 2000 with attempted murder in the second degree as a hate crime and related offenses. On or *188 about December 21, 2000, the defendant filed a timely omnibus motion seeking various relief. The People responded to the motion which was decided by the Court on or about January 17, 2001. Certain pretrial hearings were conducted on January 29, 2001 and, on or about January 30, 2001, the Court ruled on those pretrial issues. On March, 6, 2001, the case was forwarded from a TAP Part to K-TRP as a trial-ready case for April 4, 2001. On that date, the matter was adjourned until May 9, 2001 because the Legal Aid Society, which represented the defendant from the time of his arrest, had internally reassigned the case to a different attorney for trial. On May 9, 2001, the newly assigned attorney asked the Court to permit him to file a motion challenging the constitutionality of New York’s recently enacted “Hate Crimes” legislation (Penal Law § 485.00). The Court directed the defendant’s counsel to file an order to show cause addressed to this issue. The defendant filed the order as directed by the Court and the People responded with an affirmation in opposition dated May 15, 2001.
CPL 255.20 provides that all pretrial motions shall be included in the same set of motion papers and that the motion shall be served or filed within 45 days of arraignment. With two notable exceptions, any pretrial motion which does not comply with the above requirements may be summarily denied. The two exceptions are as follows. First, the Court must entertain and decide any motion based upon grounds of which the defendant could not, with due diligence, have been previously aware, or which, for other good cause, could not reasonably have been raised within the 45-day period or included within a single set of motion papers. Second, the Court may, in its discretion, entertain and decide any untimely motion, in the interest of justice and for good cause shown.
The defendant in this case seeks leave of the Court to file an untimely motion challenging the constitutionality of New York’s recently enacted “Hate Crimes” statute (Penal Law § 485.00). In so doing, the defendant relies on the second of the two exceptions contained in CPL 255.20. He argues that the untimely motion should be heard and decided for “good cause shown and in the interest of justice.”
There is surprising little appellate authority to guide the Court in exercising its discretion under this section. The most helpful decision uncovered by the Court’s research is the case of People v Coleman (114 Misc 2d 685 [Sup Ct, Kings County 1982]). The Coleman case involved three defendants all charged *189 with robbery in the first degree. None of the defendants made any motions within the 45-day window allowed by CPL 255.20. The District Attorney moved to preclude motions on that basis. In response to the People’s motion, one defendant immediately filed an “omnibus motion” which the People answered, one defendant did nothing and the third defendant filed an “omnibus motion” with his answer to the People’s motion and cross-moved to extend the motion time. The court decided the motions to which the People responded, precluded any motions by the nonresponding defendant and pursued a middle case course with respect to the third defendant.
First, the court examined the reasons alleged for the untimely filing. As asserted by counsel, these were that “he was both on trial in other matters and also trying to determine whether he should continue to represent the defendant.” (Coleman, at 687.) The court found that these reasons “with overtones of law office failure, would hardly excuse a civil default (cf. Barasch v Micucci, 49 NY2d 594) and are just as obviously insufficient to justify a failure to make pretrial motions in a criminal case.” (Supra, at 687.) The court reached the conclusion that preclusion, though a “harsh [remedy] especially since the tardiness [in this case] is of relatively short duration” was required because “to disregard the violation of the 45-day requirement where no good cause has been shown would arbitrarily negative a very clear legislative injunction.” (Supra, at 688.)
The analysis, however, did not end there. The court posed the question of whether “preclusion, regardless of the delay, constitute(s) a violation of the defendant’s right to due process and a fair trial?” (Coleman, at 688.) This issue, “turns on whether the matters precluded adversely affect the truth-determining process and so undermine fundamental constitutional rights” (at 688-689). A defendant, therefore, who has failed to act in a timely fashion, may still be entitled to relief if the consequences of his tardiness would “affect the accuracy and fairness of the truth-finding process of the trial” (at 689). In the absence of such factors, failure to move within 45 days of arraignment should be deemed a waiver. Applying this rationale to the facts of the case before it, the Coleman court precluded the defendant’s motion to suppress and to inspect the Grand Jury minutes but entertained and granted his motions for a bill of particulars and for discovery. These items, the court ruled, were nonwaivable because they related “directly to the accuracy of the truth-finding process [because] *190 [t]he inability [of the defendant] to obtain information to prepare his case would infringe upon the defendant’s constitutional right to a fair trial” (at 690).
Applying the Coleman rationale to the facts of this case, the Court must determine whether the preclusion of the defendant’s untimely challenge to the constitutionality of the “Hate Crimes” statute affects fundamental rights to the extent that it is not waivable.
Research discloses no cases precisely on point. The defendant cites People v Spadaro (104 Misc 2d 997 [Suffolk Dist Ct 1980]), People v Parris (113 Misc 2d 1066 [Crim Ct, NY County 1982]) and People v Gonzales (148 Misc 2d 973 [Westchester County Ct 1990]). People v Parris (supra) is distinguishable in that it involved a clear jurisdictional defect. People v Spadaro (supra) and People v Gonzales (supra) do involve constitutional challenges to the statutes or ordinances involved in those cases. Neither case, however, offers much guidance here.
In Spadaro, the court entertained a posttrial motion and held that a local ordinance barring operation of an “airpark” without a licence was unconstitutionally vague. The People, however, responded to the motion on the merits and did not press the issue of untimeliness.
People v Gonzales (supra) is potentially, at least, similar to the case at bar. In Gonzales, the court entertained and decided an untimely motion challenging the constitutionality of the statutory presumption precluding consent by an individual less than 17 years old to various sex acts by an adult. The Gonzales court, however, did not entertain the motion because, as the defendant claims, it involved a constitutional challenge. The court granted the motion because the relief sought was a jury instruction rather than dismissal, no hearing or undue delay were involved and the People asserted no prejudice. These considerations differ significantly from those in the case at bar.
As the court noted in Coleman (supra, at 688):
“there are strong policy reasons supporting strict enforcement of CPL 255.20. The CPL places upon the People the burden of giving the defendant a speedy trial (CPL 30.30). It seems consistent and fair that another provision of the CPL which seeks to speed the administration of criminal justice be accorded the same importance even where the burden falls on the defendant.”
There is really no conceivable reason (other than law office failure) why the proposed challenge to the constitutionality of *191 the statute was not raised in the defendant’s timely omnibus motion. The issue is not jurisdictional as in Parris, or collateral as in Gonzales, or unobjected to as in Spadaro. No cases cited by the defendant preclude this Court from exercising its discretion to summarily deny the motion.
On the other hand, it is the duty of the court to protect the fundamental rights of all citizens. New York’s “Hate Crimes” law is of recent vintage and, unlike older statutes, its constitutionality remains an open question for the courts to consider. Assuming that the defendant can mount a legitimate challenge to the constitutionality of the statute, preclusion of that challenge based upon the possible oversights or carelessness of his counsel may, possibly, result in reversal of any conviction on a claim of ineffective assistance of counsel (People v Benevento, 91 NY2d 708 [1998]).
The Court will exercise its interest of justice discretion to allow the defendant’s counsel to file the motion. Two points, however, should be well noted.
First, this decision is based, in large part, upon the assumption that there may be a valid constitutional challenge to the statute. The Court’s limited research of this issue suggests that the alleged unconstitutionality of the New York statute may be difficult to establish in light of the United States Supreme Court’s decision in Wisconsin v Mitchell (508 US 476 [1993]), which upheld the Hate Crimes legislation of a sister state which closely parallels New York’s Penal Law § 485.05. The Court, for the reasons stated, will give the defendant a chance to make the case but, at the same time, strongly suggests that, if upon reconsideration, it is determined that a good-faith challenge will not lie, that that fact be candidly admitted and further delay be avoided.
Secondly, the Court by this decision wants it clearly understood by counsel that the 45-day mandate contained in CPL 255.20 is not to be flaunted in future cases in this Court. As the Coleman court stated, there are sound policy considerations. behind this statute. Society has a strong interest in the expeditious disposition of criminal cases which will not be frustrated by careless practice or by dilatory tactics of counsel on either side. The court itself has a duty to play a role in insuring that cases are fairly, yet expeditiously, moved to trial. Justice delayed is, in fact, justice denied.
The Court has reluctantly concluded that a potential challenge to the constitutionality of a new statute together with the adverse consequences which preclusion may have on the *192 defendant’s fundamental rights will, in this case and on these very limited facts, require that counsel’s tardiness be excused. These facts, however, are quite unique and such indulgence should not be expected in more routine situations.