STEIN, J.
***346 Vehicle and Traffic Law §§ 1194 and 1195 generally govern the administration and admissibility of chemical breath tests used to determine blood alcohol content. Section 1195(1) provides that the results of such tests are admissible in evidence at a criminal trial if the tests are "administered pursuant to the provisions of section [1194]." The results of a test also may be admissible absent compliance with section 1194 where a defendant has voluntarily consented to the test because section "1194 ... ha[s] no application where the defendant expressly and voluntarily consented to a [chemical] test" ( People v. Atkins, 85 N.Y.2d 1007, 1008, 630 N.Y.S.2d 965, 654 N.E.2d 1213 [1995] ). Here, because the breathalyzer test was not administered in accordance with the **254 requirements of section 1194 and defendant's consent to take the test was not voluntary, as required by Atkins, the results of the test were properly suppressed. *1036 I.
In 2014, defendant was arrested on various charges, including operating a motor vehicle while under the influence of alcohol. More than two hours after his arrest, he was informed that police wanted him to take a breathalyzer test and was asked whether he would "take this test? Yes or no?" After defendant answered "No," he was given the "refusal warnings" set forth in Vehicle and Traffic Law § 1194 -namely, he was warned that, if he refused "to submit to the test," the result would be "the immediate suspension or subsequent revocation of [his] driver's license or operating privileges whether or not [he was] found guilty of the charges for which [he had] been arrested." In addition, he was warned-inaccurately-that if he "refuse[d] to submit to the test or any portion thereof, it w[ould] be introduced as evidence against [him] in any trial proceeding resulting from the arrest." Defendant then agreed to take the test and provided a breath sample, which showed that his blood alcohol level was above the legal limit.
Defendant subsequently moved to suppress the videotaped recording of the administration of the breathalyzer test, the test results, and all statements that he made to the arresting officer, including his initial refusal to take the test. Defendant asserted that, pursuant to Vehicle and Traffic Law § 1194, because more than two hours had passed between the time of his arrest and the request that he take the breathalyzer test, the officer administering the test should not have advised him ***347 that, if he refused to take it, his driver's license would be suspended and the refusal could be used against him in court. Defendant maintained that the refusal warnings were inappropriate after two hours, and rendered his consent to the test involuntary. Criminal Court, adopting a Judicial Hearing Officer's decision, granted the motion to suppress both defendant's initial refusal to take the test and the test results. The court ruled that, "[i]n light of the uncontradicted evidence that the refusal occurred more than two hours after arrest, suppression of the refusal is warranted." The court further concluded that the breathalyzer test results should have been suppressed because "the warnings given by the police were coercive."
The People moved to reargue, asserting that, although the refusal "warnings were most certainly designed to induce submission to the test [and][i]t is undisputed that they do threaten the operator-accused with adverse consequences [for refusal] to consent," the warnings do not render a driver's consent involuntary because they merely inform the driver of the privilege that may be lost due to refusal, and that the refusal can be used against the driver in any subsequent legal proceedings. Criminal Court denied the motion to reargue, concluding that under Atkins, "where the chemical test is administered more than two hours after an arrest, admissibility of the results requires that the People show that consent was express and voluntary." The court then held that the People failed to meet their burden of demonstrating that defendant's consent was "voluntary and not the result of coercive conduct by the officer" because defendant consented "only after [the officer] gave the improper warnings."
Upon the People's appeal, the Appellate Term, First Department affirmed, holding that Criminal Court "properly suppressed the breathalyzer test results" because defendant's consent, given in response to "inappropriate **255 warnings," was involuntary. ( 54 Misc 3d 128[A], 2016 NY Slip Op 51806[U], *1, 2016 WL 7434671 [App Term, 1st Dept 2016] ). A Judge of this Court thereafter granted the People leave to appeal ( 29 N.Y.3d 1084, 64 N.Y.S.3d 174, 86 N.E.3d 261 [2017] ). *1037 II.
In order to combat driving while intoxicated, which we have long recognized as a "menace" ( People v. Ward, 307 N.Y. 73, 77, 120 N.E.2d 211 [1954] ), "law enforcement agencies have been granted statutory authority (see Vehicle and Traffic Law § 1194 ) to use an important investigative tool-chemical tests to determine blood alcohol content" ( ***348 People v. Washington, 23 N.Y.3d 228, 231, 989 N.Y.S.2d 670, 12 N.E.3d 1099 [2014] ). As relevant here, Vehicle and Traffic Law § 1194(2)(a)(1) -the "deemed consent provision"-states:
"Any person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test... for the purpose of determining the alcoholic and/or drug content of the blood provided that such test is administered by or at the direction of a police officer ...
having reasonable grounds to believe such person to have been operating in violation of any subdivision of section [1192] of this article and within two hours after such person has been placed under arrest for any such violation" (emphasis added).
Section 1194(2)(b)(1) provides that the test shall not be given if a person who is under arrest and who has "been informed that the person's license ... shall be immediately suspended and subsequently revoked, ... whether or not the person is found guilty of the charge for which such person is arrested or detained," nevertheless "refuses to submit to such chemical test." "Evidence of a refusal to submit to such chemical test ... shall be admissible" at trial, "upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal" (id. § 1194[2][f] ).
This Court has explained that "[s]ection 1194 'grants a motorist a qualified right to decline to voluntarily take a chemical test' after being warned that a refusal 'will result in the immediate suspension and ultimate revocation of the motorist's driver's license for one year,' along with evidence of the refusal being admissible at any subsequent criminal trial" ( Washington, 23 N.Y.3d at 231, 989 N.Y.S.2d 670, 12 N.E.3d 1099, quoting People v. Smith, 18 N.Y.3d 544, 548, 942 N.Y.S.2d 426, 965 N.E.2d 928 [2012] ). The statute "is designed to encourage those suspected of alcohol-related driving offenses to comply with requests to submit to chemical tests in order to obviate the need for securing court orders authorizing blood tests" ( Washington, 23 N.Y.3d at 231, 989 N.Y.S.2d 670, 12 N.E.3d 1099 ; see also Sponsor's Mem, Bill Jacket, L 1968, ch 85), or " 'the need for the use of force by police officers if an individual in a drunken condition should refuse to submit to the test' " ( People v. Kates, 53 N.Y.2d 591, 596, 444 N.Y.S.2d 446, 428 N.E.2d 852 [1981], quoting Interim Rep of N.Y. St Joint Legis Comm on Motor Veh Problems, 1953 N.Y. Legis Doc No. 25 at 35). In that regard, we have repeatedly stated that "there is no constitutional right to avoid submitting to a chemical test of this nature" ( Smith, 18 N.Y.3d at 548, 942 N.Y.S.2d 426, 965 N.E.2d 928 ;
***349 Kates, 53 N.Y.2d at 594-595, 444 N.Y.S.2d 446, 428 N.E.2d 852 ; People v. Thomas, 46 N.Y.2d 100, 109, 412 N.Y.S.2d 845, 385 N.E.2d 584 [1978], appeal dismissed 444 U.S. 891, 100 S.Ct. 197, 62 L.Ed.2d 127 [1979] ; see also **256 Birchfield v. North Dakota, 579 U.S. ----, 136 S.Ct. 2160, 2184, 195 L.Ed.2d 560 [2016] ["the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving"] ).
At the same time, however, nothing prevents the Legislature from granting accused motorists a statutory right to decline the test or from placing limits on the authority of the police to administer the *1038 test absent voluntary consent-and that is precisely what the legislature has done. Specifically, while the statute is designed to compel compliance, it also sets express limits on police authority to perform the breathalyzer test when, due to the absence of express and voluntary consent (see Atkins, 85 N.Y.2d at 1008, 630 N.Y.S.2d 965, 654 N.E.2d 1213 ), they must rely on a motorist's "deemed consent" under Vehicle and Traffic Law § 1194(2)(a).[1] Those limits, which we cannot simply dismiss as meaningless, include the requirement that the test be performed within two hours. To be sure, we have clarified that the "two-hour limitation" is not "an absolute rule of relevance, proscribing admission of the results of any chemical test administered after that period regardless of the nature of the driver's consent" ( Atkins, 85 N.Y.2d at 1009, 630 N.Y.S.2d 965, 654 N.E.2d 1213 [emphasis added]; see People v. Finnegan, 85 N.Y.2d 53, 59, 623 N.Y.S.2d 546, 647 N.E.2d 758 [1995], cert denied 516 U.S. 919, 116 S.Ct. 311, 133 L.Ed.2d 214 [1995] ; People v. McGrath, 135 A.D.2d 60, 62, 524 N.Y.S.2d 214 [2d Dept. 1988], affd for reasons stated below 73 N.Y.2d 826, 537 N.Y.S.2d 480, 534 N.E.2d 318 [1988] ). Nevertheless, we contemporaneously ***350 instructed that the statute "mandates that the breathalyzer test be performed within a two-hour time period following arrest" when the test is conducted pursuant to the deemed consent provision of section 1194(2)(a) ( People v. Finnegan, 85 N.Y.2d 53, 59, 623 N.Y.S.2d 546, 647 N.E.2d 758 [1995] [emphasis added] ).
III.
Here, because the breathalyzer test was not performed within two hours of defendant's arrest, and the requirements necessary to obtain a court order pursuant to Vehicle and Traffic Law § 1194(3) were not met, the test results were not admissible under the statutory scheme (see Vehicle and Traffic Law § 1195[1] ; see also Smith, 18 N.Y.3d at 550-551, 942 N.Y.S.2d 426, 965 N.E.2d 928 [holding that, absent **257 compliance with the statute, even evidence of a refusal must be suppressed] ). Nevertheless, as Atkins instructs, the test results may still be admissible if defendant voluntarily consented to take the test because "the two-hour limitation ... has no application" when the "defendant [has] expressly and voluntarily consented to administration of the [breath] test" ( 85 N.Y.2d at 1009, 630 N.Y.S.2d 965, 654 N.E.2d 1213 ; see *1039 Smith, 18 N.Y.3d at 548 n. 1, 942 N.Y.S.2d 426, 965 N.E.2d 928 ).[2] The issue before us, then, is whether defendant gave his voluntary consent to the administration of the test, which generally presents a mixed question of law and fact (see e.g. People v. Mercado, 25 N.Y.3d 936, 937, 5 N.Y.S.3d 741, 28 N.E.3d 1181 [2015] ). However, it is undisputed that defendant expressly consented only after the expiration of the two-hour period and after being warned about the consequences of failing to do so; the parties' dispute here turns on whether the warnings were legally accurate and, consequently, whether his consent was voluntary (compare People v. Skardinski, 24 A.D.3d 1207, 1208, 807 N.Y.S.2d 232 [4th Dept. 2005] [police warning that ***351 defendant's driver's license would be suspended if she did not submit to chemical test incorrect where defendant had not yet been arrested] with People v. Slater, 166 A.D.2d 828, 562 N.Y.S.2d 985 [3d Dept. 1990], lv denied 76 N.Y.2d 1024, 565 N.Y.S.2d 775, 566 N.E.2d 1180 [1990] [consent voluntary where police warned the defendant that, if he did not consent, they would obtain a court order permitting blood to be taken against his will]; see Birchfield, --- U.S. ----, 136 S.Ct. at 2186 [remand to reevaluate voluntariness of consent where officer's advisory that law required submission to a blood test was rendered inaccurate by Supreme Court's decision]; see also Thomas, 46 N.Y.2d at 107, 412 N.Y.S.2d 845, 385 N.E.2d 584 ["(c)ompulsion ... may ... be accomplished by the State's attaching to the alternative course of action a penalty, punishment or detriment for the imposition of which no other justification exists and of which the defendant is therefore entitled to be free"] ). We conclude that, because more than two hours had passed since defendant's arrest, the warning that evidence of his refusal to take the breathalyzer test would be admissible at trial was inaccurate as a matter of law and, therefore, the record supports the conclusion of the courts below that his consent to the test was involuntary.
As previously noted, evidence of a refusal to take a breathalyzer test is admissible at trial pursuant to Vehicle and Traffic Law § 1194(2)(f). Although there is no time limit expressly set forth in **258 section 1194(2)(f), that provision refers directly back to the chemical test authorized in subdivision (2)(a). Specifically, section 1194(2)(f) states that it is "[e]vidence of a refusal to submit to such chemical test" that is admissible at trial (emphasis added), with "such chemical test" being the one to which a defendant is deemed to have consented in subdivision (2)(a). In other words, the use of the word "such" in section 1194(2)(f) ties that provision back to subdivision (2)(a)-a different subparagraph *1040 within the same subdivision-so that the two must be read together (see McKinney's Cons Laws of NY, Book 1, Statutes § 97, Comment at 213-214, 216 ["(W)ords, phrases, and sentences of a statutory section should be interpreted with reference to the scheme of the entire section ... and the meaning of a single section may not be determined by splitting it up into several parts."] ). Section 1194(2)(a) provides, in turn, that a defendant is "deemed to have given consent to a chemical [breath] test," so long as the test is performed "within two hours after such person has been placed under arrest for" driving while intoxicated. Inasmuch as "such chemical test" is no longer authorized under the deemed ***352 consent provision in section 1194(2)(a) after the two-hour period has expired, the motorist cannot, as a matter of law, refuse to take the test within the meaning of section 1194(2)(f).[3] Any evidence of a refusal after that point must be suppressed because it does not fall within the parameters of the statute (see Smith, 18 N.Y.3d at 550-551, 942 N.Y.S.2d 426, 965 N.E.2d 928 ).
Our interpretation of Vehicle and Traffic Law § 1194(2)(f) is supported by that provision's legislative history. As defendant notes, when the deemed consent provision was first enacted in 1953 as section 71-a of the Vehicle and Traffic Law, motorists had an absolute right to refuse the test-subject only to immediate license revocation (see Kates, 53 N.Y.2d at 596, 444 N.Y.S.2d 446, 428 N.E.2d 852 )-and evidence of a refusal to take the test was never admissible (see People v. Paddock, 29 N.Y.2d 504, 323 N.Y.S.2d 976, 272 N.E.2d 486 [1971] ; People v. Stratton, 1 N.Y.2d 664, 150 N.Y.S.2d 29, 133 N.E.2d 516 [1956], affg 286 App.Div. 323, 143 N.Y.S.2d 362 [3d Dept. 1955] ). Therefore, at the time the warnings were added to the statute, voluntariness was not a concern because a refusal could not be used against a defendant at trial. Indeed, the Legislature noted that "[t]he proposal [to add the warning language] would not affect any subsequent criminal proceedings on the charge for which arrested, since it specifically applies only to revocations for refusal to consent to the chemical test" (Sponsor's Mem, Bill Jacket, L 1968, ch 85).
The statute was not amended to permit evidence of a refusal at trial until 1973, in response to a concurring opinion by Judge Jasen in Paddock (see Sponsor's Mem, Bill Jacket, L 1973, ch 351). In his concurrence, **259 Judge Jasen urged the Legislature to amend the statute to permit evidence of refusals because "there is no constitutional right to refuse to submit to such a test, [and] it necessarily follows that there can be no constitutional prohibitions to prevent comment upon the accused's failure to take the test" ( Paddock, 29 N.Y.2d at 505, 323 N.Y.S.2d 976, 272 N.E.2d 486 [Jasen, J., concurring ***353 ]; see Sponsor's Mem, Bill Jacket, L 1973, ch 351 [noting that "the prohibition on commenting on the refusal to take the test is strictly statutory"] ). *1041 Given the previously well-established rule that evidence of a refusal was inadmissible, the 1973 amendment was in derogation of common law. Therefore, it should be strictly construed (see Rust v. Reyer, 91 N.Y.2d 355, 360, 670 N.Y.S.2d 822, 693 N.E.2d 1074 [1998] ; see also McKinney's Cons Laws of NY, Book 1, Statutes § 304), further supporting an interpretation of the statute that would apply the two-hour limitation in Vehicle and Traffic Law § 1194(2)(a) to the evidentiary provision in Vehicle and Traffic Law § 1194(2)(f).
Finally, although we agree with the Appellate Term's conclusion that the warning pertaining to the admissibility of defendant's refusal was legally inaccurate and, therefore, inappropriate, we note again, as Judge Jasen did in his concurrence in Paddock, that the rights asserted by defendant here-insofar as they relate to breath tests-are statutory, not constitutional (see Smith, 18 N.Y.3d at 548, 942 N.Y.S.2d 426, 965 N.E.2d 928 ; Kates, 53 N.Y.2d at 594-595, 444 N.Y.S.2d 446, 428 N.E.2d 852 ; Thomas, 46 N.Y.2d at 109, 412 N.Y.S.2d 845, 385 N.E.2d 584 ; Paddock, 29 N.Y.2d at 505, 323 N.Y.S.2d 976, 272 N.E.2d 486 [Jasen, J., concurring] ). The legislature is free to amend the statute to clarify the scope of the statutory rights, particularly in light of the express clarification in Birchfield that warrantless breath tests are constitutionally permissible 579 U.S. at ----, 136 S.Ct. at 2184. However, it is not for this Court, by judicial fiat, to strike the express protections that the legislature has provided to motorists in Vehicle and Traffic Law § 1194(2) on the ground that those protections merely "set up arbitrary obstacles to ... necessary evidence collection" (DiFiore, Ch. J., dissenting op. at 357, 78 N.Y.S.3d at 261-62, 102 N.E.3d at 1043-44).
In sum, because the warnings given to defendant were at least partially inaccurate-i.e., as to the admissibility at trial of his refusal to submit to testing-the courts below properly suppressed the results of the breathalyzer test on the ground that defendant's consent to take the test was involuntary. The People's remaining argument regarding the accuracy of the warning of license suspension-the crux of the dissent-is both irrelevant to our analysis and academic. Further, the People's argument concerning the admissibility of defendant's initial refusal to take the breathalyzer lacks merit inasmuch as defendant did not "persist[ ] in the refusal" ( Vehicle and Traffic Law § 1194[2][f] ).
Accordingly, the order of the Appellate Division should be affirmed.

Contrary to the People's argument, as well as the conclusion of the Appellate Division, Second Department in People v. Robinson 82 A.D.3d 1269, 1269 [2d Dept. 2011], lv denied 17 N.Y.3d 800 (2011) and the dissenters, the applicability of the deemed consent provision in Vehicle and Traffic Law § 1194(2)(a)(1) is not limited to those who are "incapable of consenting" or, as the dissent would have it, "unconscious or incapacitated drivers" (DiFiore, Ch. J., dissenting op. at 358, 78 N.Y.S.3d at 262, 102 N.E.3d at 1044). The statutory language itself provides that "[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test ... within two hours after ... arrest" (emphasis added). The relevant legislative history further clarifies that the deemed consent provision applies to any person "suspected of driving while under the influence of intoxicating liquors" (Sponsor's Mem, Bill Jacket, L 1953, ch 854 at 35). Finally, in Kates, this Court noted that the "general rule" is that any person operating a motor vehicle is deemed to have consented to such tests 53 N.Y.2d at 595, 444 N.Y.S.2d 446, 428 N.E.2d 852 ; we did not suggest that the deemed consent provision is limited to those who are unconscious or otherwise incapable of consent, and stated that the "exception" to the general rule contained in subdivision (2) "is only applicable when the driver refuses to consent" (id. ). That is, the relevant statutory distinction between conscious and unconscious drivers is that only the former need be given the opportunity to revoke consent (see id. at 595-596, 444 N.Y.S.2d 446, 428 N.E.2d 852 ).

The fundamental flaw in the dissent's reasoning is its failure to recognize the distinction between consent that is merely "express" and consent that is both "express[ ] and voluntar[ ]y, as required by Atkins, 85 N.Y.2d at 1009, 630 N.Y.S.2d 965, 654 N.E.2d 1213 ; see DiFiore, Ch. J., dissenting op. at 358-361, 78 N.Y.S.3d at 262-65, 102 N.E.3d at 1044-47). We decline to minimize our prior decision in Atkins, including the voluntariness requirement, as "somewhat academic" (DiFiore, Ch. J., dissenting op. at 362, 78 N.Y.S.3d at 265-66, 102 N.E.3d at 1047-48) simply because the Supreme Court of the United States made express in Birchfield, --- U.S. ----, 136 S.Ct. at 2184 what this Court had recognized long before Atkins was decided-that the Fourth Amendment permits warrantless breath tests (see Kates, 53 N.Y.2d at 594-595, 444 N.Y.S.2d 446, 428 N.E.2d 852 ). Moreover, contrary to the People's arguments, Atkins does not imply that the two-hour rule is simply irrelevant or that, because a breath test obtained based on voluntary consent is admissible after two hours, a refusal is admissible as well. Rather, Atkins held only that the section 1194(2)(a) is inapplicable when a defendant has voluntarily consented because that statute is concerned only with those " 'required to submit' " (id. at 1008, 630 N.Y.S.2d 965, 654 N.E.2d 1213, quoting Ward, 307 N.Y. at 77, 120 N.E.2d 211 ).

A truly holistic reading of the statute, taking into account its structure, further supports this interpretation. As relevant here, Vehicle and Traffic Law § 1194 authorizes police to seek two types of chemical tests-those based upon deemed consent under subdivision (2) and court-ordered tests under subdivision (3). Section 1194(2) is a self-contained paragraph that refers only to the "such" chemical tests described therein, i.e., the chemical test to which a defendant is "deemed to have given consent" (id. at § 1194[2][a] ). Section 1194(3), on the other hand applies to "[c]ompulsory chemical tests," which the statute defines as "[c]ourt ordered chemical tests" (id. § 1194[3][a] ). The reference to "such chemical test[s]" in subdivision (3) refers to the compulsory, court-ordered tests addressed in that paragraph and does not operate to eliminate the two-hour requirement from subdivision (2), as the dissenters conclude (see DiFiore, Ch. J., dissenting op. at 361-362 n. 6, 78 N.Y.S.3d at 265 n. 6, 102 N.E.3d at 1047 n. 6).