People v Marte (2021 NY Slip Op 04648)





People v Marte


2021 NY Slip Op 04648


Decided on August 05, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 05, 2021

Before: Renwick, J.P., Kern, Singh, Moulton, JJ. 


Ind No. 2689/17 Appeal No. 14052 Case No. 2019-1394 

[*1]The People of the State of New York, Respondent,
v
Derly Marte, Defendant-Appellant.


Lipman & Booth, LLC, New York (Christopher Booth of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Karl Z. Deuble of counsel), for respondent.



Judgment, Supreme Court, New York County (James M. Burke, J.), rendered August 8, 2018, as amended October 4, 2018, convicting defendant, after a jury trial, of operating a motor vehicle while under the influence of alcohol, and sentencing him to a prison term of 90 days, with 5 years' probation, affirmed.
At issue on this appeal is whether the trial court providently exercised its discretion in denying, as untimely, defendant's midtrial motion to suppress the results of an Intoxilyzer breath test on the ground of lack of valid consent to take the test. We find that the court properly exercised its discretion because defendant never moved to suppress on this ground, expressly declined to raise this claim at a pretrial suppression hearing dealing with other issues, and provided no basis for finding that he could not, with due diligence, have been previously aware of the issue, or that he had good cause for not raising it earlier. We respectfully disagree with the dissent because it goes to the merits and not the timeliness of this motion.
Defendant was charged with two counts of operating a motor vehicle while under the influence of alcohol — one for "driving while intoxicated; per se" (see Vehicle and Traffic Law §1192[2]), and one for "driving while intoxicated" (see Vehicle and Traffic Law §1192[3]) — based on allegations that, on March 20, 2017, he was driving with a blood alcohol content of at least .08% and while in an intoxicated condition.
On June 19, 2018, a pretrial suppression hearing was held. The People elicited testimony from Office Daniel Lall that on March 20, 2017 at approximately 6:45 p.m., while using his radar gun, Lall measured the speed of the car that defendant was driving at 70 mph, which was 20 miles over the posted speed limit. Lall drove after the car and stopped it within a quarter mile. Lall approached the driver's side door, told defendant why he stopped him, and asked to see defendant's driver's license and registration. Defendant complied with Lall's request. Lall smelled an odor of alcohol, and noticed that defendant had bloodshot eyes, a flushed face, and slightly slurred speech. Lall asked defendant if he had been drinking and defendant replied that he had had two beers. Believing that defendant was intoxicated, Lall requested backup from his supervisor, Sergeant Yeninas.
When Yeninas arrived, he asked defendant if he had had anything to drink. Defendant said that he "had nothing to drink," but he later admitted that he had had two beers. The officers asked defendant to step out of the car. Defendant looked unsteady on his feet and said that he had trouble walking because he recently had surgery on his thighs. Lall placed defendant under arrest, and transported defendant to the police precinct for an Intoxilyzer breath test.
The court denied defendant's pretrial suppression motion, finding that Lall had probable cause to stop defendant's car because defendant was driving 70 mph, which was 20 miles over the [*2]speed limit. The court ruled that defendant's statement that he had had two beers and Lall's observations regarding defendant's condition gave Lall probable cause to arrest defendant for driving while intoxicated. Thus, the court declined to suppress any evidence that the police obtained as a result of the arrest.
The jury trial commenced on June 22, 2018. After the parties gave opening statements and the testimony of the People's first two witnesses, defense counsel, for the first time, raised that he intended to contest the voluntariness of defendant's consent to the Intoxilyzer breath test. The motion was summarily denied. On June 26, 2018, defendant was convicted by the jury of one count of operating a motor vehicle under the influence of alcohol, for driving with a blood content of at least .08% (Vehicle and Traffic Law § 1192[2], 1193[1][c][i]). Defendant was acquitted on the common-law count. On appeal defendant argues that it was error to deny his motion, made after the first day of trial, to suppress the Intoxilyzer results.
The trial court providently found that the motion to suppress the result of the Intoxilyzer breath test was untimely. The dissent's reliance on a series of trial level cases granting review of untimely motions is misplaced. We agree that trial courts have discretion to hear and decide such motions pursuant to CPL 255.20. However, on this record, for all the reasons that follow, the trial court did not abuse its discretion (see e.g. People v Dosamentes, 180 AD3d 518, 519 [1st Dept 2020], lv denied 35 NY3d 993 [2020]; People v Mason, 157 AD3d 439, 439-440 [1st Dept 2018], lv denied 31 NY3d 985 [2018]; People v Marengo, 287 AD2d 279 [1st Dept 2001], lv denied 97 NY2d 684 [2001]; People v Talmadge, 186 AD3d 1780, 1784 [3d Dept 2020]; People v Jackson, 48 AD3d 891, 893 [3d Dept 2008], lv denied 10 NY3d 841 [2008]; People v Killings, 191 AD2d 586, 587 [2d Dept 1993], lv denied 81 NY2d 1075 [1993]; People v Franklin, 127 AD2d 685, 685-686 [2d Dept 1987]).
A defendant may move to suppress the results of a chemical test administered pursuant to Vehicle and Traffic Law § 1194(3) (see CPL 710.20[5]) by filing a motion "within forty-five days after arraignment and before commencement of trial, or within such additional time as the court may fix upon application" (see CPL 255.20[1]). CPL 255.20(3) prescribes that for pretrial motions filed outside the 45-day limitation, the court "must entertain and decide on its merits, at any[]time before the end of the trial, any appropriate pre-trial motion based upon grounds of which the defendant could not, with due diligence, have been previously aware, or which, for other good cause, could not reasonably have been raised within the period specified." The section also provides that any other motion not filed within the specified time "may be summarily denied."
The record indicates that when counsel made the omnibus motion, dated September 12, 2017, defendant was well aware of the facts [*3]underlying the administration of the Intoxilyzer breath test and, for reasons that are not apparent, chose not to file a motion on that ground.
On October 17, 2017, the court granted a Dunaway/Huntley hearing. At the suppression hearing held on June 19, 2018, no evidence was presented regarding the administration of the Intoxilyzer breath test. In its order, the trial court noted that at this hearing it had asked defense counsel whether defendant was raising any suppression claims regarding events surrounding the Intoxilyzer breath test, and counsel indicated that he "did not want to challenge that at the hearing stage." The court further noted that the prosecutor had sought to play the video to establish that defendant voluntarily took the Intoxilyzer breath test. However, because defense counsel had indicated to the trial court that he "did not want to broach th[at] topic," the court did not permit the People to present evidence concerning the voluntariness of the test.
Defendant's reliance on People v Odum (31 NY3d 344 [2018]) is misplaced. Odum goes to the validity of the Intoxilyzer breath test, not the timeliness of the suppression motion. Nor does it provide an excuse for counsel's inexplicable failure, after being asked by the court whether defendant intended to advance suppression claims regarding the events relating to the Intoxilyzer test, to expand the scope of the pretrial suppression to include arguments based on Odum.
Defendant contends that his untimeliness was excusable because Odum, which he characterizes as "essentially new authority," was decided just 47 days before the suppression hearing. Of course, in the first instance, this "timing" provides no excuse for counsel's failure to seek expansion of the scope of the suppression hearing to include an argument based on Odum, which he did not do.
Further, while an intervening marked change in the law may arguably provide a reason for a court to exercise its discretion to allow an otherwise untimely motion, Odum does not represent a seed change in the law. Indeed, in People v Rosa (112 AD3d 551 [1st Dept 2013], lv denied 22 NY3d 1202 [2014]), which defense counsel here relied on in announcing at trial that he would seek to challenge the validity of defendant's "deemed" consent, we held that "[b]ecause more than two hours had passed since defendant's arrest, the officer who administered the breathalyzer test should not have advised defendant that if he refused to take the test, his driver's license would be suspended and the refusal could be used against him in court" (id. at 552). While we ultimately found that defendant actually consented to the test, our reasoning on the "deemed consent" issue was in essence the same as the Odum Court. The dissent attributes counsel's failure to make a timely motion as inadequate assistance of counsel. This argument is not advanced on appeal and is not properly before us.
Furthermore, the validity of defendant's consent to the test was an [*4]issue to be determined by the court before trial, not an issue that defendant was entitled to litigate during trial without previously making a suppression motion. Defendant's reliance on People v Plevy (52 NY2d 58 [1980]) does not support an alternate outcome as it would effectively negate CPL 255.20(3).
Finally, the dissent's reliance on People v Weaver (112 AD2d 782 [4th Dept 1985]) is misdirected. In fact, Weaver holds that the standard for reversal is abuse of discretion and thatdecisions on untimely motions are discretionary determinations. Similar to Weaver, we too find that, in the interest of justice, there is "no abuse of discretion here" (id.). For these reasons, the conviction should be affirmed.
All concur except Renwick, J.P. who dissents in a memorandum as follows:
RENWICK, J.P., dissenting
I dissent because I believe the court improperly rejected as untimely defendant's mid-trial motion to suppress the results of an Intoxilyzer test. Relying primarily upon People v Odum (31 NY3d 344 [2018]), defendant argued that the Intoxilyzer results must be suppressed because the test was administered more than two hours after defendant's arrest, rendering defendant's consent to conduct the test involuntary as a result of inaccurate warnings. Generally, a motion to suppress evidence may be summarily denied for failure to act in a timely fashion [FN1] (see e.g. People v Mason, 157 AD3d 439, 440 [1st Dept 2018], lv denied 31 NY3d 985 [2018]). However, a court is not foreclosed from hearing an untimely motion where good cause and the interests of justice require their resolution (see CPL 255.20(3); see e.g. People v Weaver, 112 AD2d 782 [4th Dept 1985]). The legislature intended to provide fairness by not foreclosing untimely motions where good cause and the interests of justice require their resolution (People v Perry, 128 Misc 2d 430, 436-437 [Sup Ct, NY County 1985]).
This case met the good cause and interests of justice standard. Had a timely motion been made, it is likely that defendant would have prevailed on his motion to suppress the results of the Intoxilyzer. Indeed, it appears from the current record that defendant expressly consented to the test only after the expiration of the two-hour period and after being warned, inaccurately, about the consequences of failing to do so. On appeal, however, the People argue that the test was, in fact, "administered" within two hours because the police officer began the required pre-testing protocols at 8:45 p.m., less than two hours after defendant's arrest at 7:05 p.m. In the People's view, "in determining when, exactly, the test is 'administered' for the purposes of Vehicle and Traffic Law (VTL) § 1194(2)(a)(1), it is reasonable to use the time when the testing process begins." The People offer no authority for this interpretation, and it is inconsistent with the plain language of paragraph (2) of subdivision 2 of § 1194, which appears to be clear that in order for the test results to be admissible [*5]in court, the chemical test must be taken within two hours after such person has been placed under arrest or within two hours after a breath test. It is also inconsistent with relevant case law (see e.g. People v Ali, 151 Misc 2d 742 [Crim Ct, NY County 1991]). As fully explained below, under similar circumstances to this case where the test and warnings were conducted after the two-hour period, the Court of Appeals held in People v Odum (31 NY3d at 344) that the court below properly suppressed the results of the breathalyzer test on the ground that the defendant's consent to take the test was involuntary.
Pursuant to Vehicle and Traffic Law § 1194 (2) (a) (1), a motorist whom the police have reasonable grounds to believe is driving in violation of Vehicle and Traffic Law § 1192 "shall be deemed to have given consent to a chemical test . . . for the purpose of determining the alcoholic and/or drug content of the blood" where the "test is administered" "within two hours after such person has been placed under arrest" (Vehicle and Traffic Law § 1194[2][a][1]). "Section 1194 (2) (b) (1) provides that the test shall not be given if a person who is under arrest and who has 'been informed that the person's license . . . shall be immediately suspended and subsequently revoked, . . . whether or not the person is found guilty of the charge for which such person is arrested or detained,' nevertheless 'refuses to submit to such chemical test.' 'Evidence of a refusal to submit to such chemical test . . . shall be admissible' at trial, 'upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal'" (Odum, 31 NY3d at 348, quoting Vehicle and Traffic Law § 1194 [2] [f]).
The Court of Appeals in People v Atkins (85 NY2d 1007 [1995]) held that a chemical test administered two hours after a driver's arrest is admissible where a defendant expressly and voluntarily consents to such chemical test. The Court, however, did not define "voluntary consent." As a result, courts, in applying Atkins, narrowly applied the two-hour limitation only to defendants who are incapable of consent (see e.g. People v Rosa, 112 AD3d 551 [1st Dept 2013], lv denied 22 NY3d 1202 [2014] [defendant's consent to chemical test two hours after his after arrest was voluntary notwithstanding improper refusal warning]; People v Robinson, 82 AD3d 1269 [2d Dept 2011], lv denied 17 NY3d 800 [2011] [refusal to submit outside of two hours properly admitted into evidence]; People v Olmo, 56 Misc 3d 969, 973 [Crim Ct, Bronx County 2017] [two-hour limitation only applies to unconscious or incapacitated drivers].
In People v Odum (31 NY3d at 344), the Court of Appeals implicitly overruled those cases and provided clarification on the applicability of the "two-hour rule" in cases where a motorist is not incapacitated and is given refusal warnings after two hours. In People v Odum, the defendant [*6]was arrested on multiple charges, including DWI. More than two hours after his arrest, police asked him to submit to a breathalyzer test. When defendant said no, he was given "refusal warnings" under section 1194. Following these warnings, the defendant agreed to take the breathalyzer test. The Court of Appeals held that because the breathalyzer test was not performed within two hours of the defendant's arrest, the test's results were not admissible under the statutory scheme. The Court then proceeded to the analysis under People v Atkins (85 NY2d at 1007) as to whether the defendant voluntarily consented to take the test. The Court answered in the negative because the refusal warnings were at least partially incorrect and, thus, the "consent" was obtained involuntarily. At issue was the portion of the warnings that said that the defendant's refusal could be used against him. Because the two-hour window was passed, they could not. Thus, the inaccurate warnings render a motorist's consent to a chemical test involuntary and, consequently, the result is inadmissible (id.). Similarly, as indicated, in this case, more than two hours after his arrest, defendant was asked to submit to a chemical test, which included inaccurate warnings that said that the defendant's refusal could be used against him. Accordingly, as a matter of law, the result of the test was subject to suppression (Odum, 31 NY3d at 349-351).
Here, the majority finds that, irrespective of the merits of the motion, the trial court providently exercised its discretion in denying, as untimely, defendant's motion to suppress the results of the Intoxilyzer test, on the ground of involuntary consent, because "defendant was aware of the test issue and has not demonstrated a good cause for failing to raise it within the 45-day period." Thus, the majority argues, counsel's "inexplicable" failure to move was sufficient to deny the untimely motion. However, the discretion to entertain an untimely motion, on "good cause and interest of justice," is not limited to cases where there was no opportunity to learn facts which might possibly have formed the basis of a suppression motion. Instead, the statutory provision was designed to provide fairness and constitutionality by not foreclosing motions if good cause and interest of justice require their resolution (see People v Amadeo, 188 Misc 2d 187 [Sup Ct, Queens County 2001]; People v Perry, 128 Misc 2d 430 [Sup Ct, NY County 1985]). Accordingly, courts have held that a defendant who for no apparent reason failed to act within the time parameters of CPL 255.20 may still be entitled to relief if the consequences of his/her tardiness will affect the accuracy and fairness of the truth finding process at trial (see e.g. People v Fox, 17 Misc 3d 281 [Sup Ct, Kings County 2007]; Amadeo, 188 Misc 2d 187; People v Gonzales, 148 Misc 2d 973 [County Ct, Westchester County 1990]; People v Wassen, 150 Misc 2d 662 [Crim Ct NY County 1991]; People v Coleman, [*7]114 Misc 2d 685 [Sup Ct, Kings County 1982]).
In my view, the "good cause and interest of justice" standard was met in this case. The underlying premise of the statutory scheme governing pretrial motions and relief is to avoid trial delay based on last-minute defense motions made solely to delay. Unlike cases where waiver has been found, on this record, there was no delay tactic employed in not making the suppression motion. Instead, counsel's failure to timely move to suppress the results of the Intoxilyzer test is attributable to his misunderstanding of the applicable law. A defendant who fails to act in a timely fashion in serving or filing a pretrial motion should be entitled to relief where, as here, the consequences of such defendant's tardiness would affect the fairness of the truth-finding process of the trial (see Amadeo, 188 Misc 2d 187; People v Coleman, 114 Misc 2d 685, 687 [Sup Co, Kings County 1982]). Once defense counsel became aware of the applicable two-hour rule and learned of People v Odum (31 NY3d at 344), he sought to rectify his mistake by moving to suppress. As the majority admits, there was no conceivable explanation for why the proposed challenge of the voluntariness of the Intoxilyzer test was not raised in defendant's otherwise timely omnibus motion.
The majority, however, reasons that the timing of the Odum decision (47 days before the suppression hearing) does not excuse the untimeliness of defendant's motion because Odum did not represent a "seed change in the law." According to the majority, the reasoning in this Court's decision, four years before Odum, in People v Rosa (112 AD3d at 551), on the involuntariness issue was, in essence, the same as in the Odum Court. This view misses the point. Based on Odum and Rosa, it is abundantly clear that counsel's failure to make a timely motion to suppress the Intoxilyzer test on voluntariness grounds was plainly and simply based on a misunderstanding of the applicable law (namely that defendant's consent to the Intoxilyzer tests was involuntary, based on the fact that the defendant was improperly warned, more than two hours after his arrest, that his refusal to submit to the test would result in the suspension and revocation of his license and that the refusal may be used against him).
It is this significant issue that the majority dismisses as an "argument . . . not advanced and not properly before [this Court.]" Of course, the issue is not before this Court because the same counsel who failed to challenge the voluntariness of the Intoxilyzer test, in the otherwise timely omnibus motion, is the same counsel who represents defendant on this appeal. An appellate court, however, is empowered to consider the trial record retrospectively to determine whether an injustice has occurred, or substantial rights of a defendant have been impaired (People v La Belle, 18 NY2d 405, 409 [1966]; People v Helfant, 249 NY 419 [1928]).
That is exactly the situation before this Court[*8]. If waiver of suppression of the Intoxilyzer test is found, as the majority urges, and a conviction affirmed, the failure to make any timely written motion, on the voluntariness of the Intoxilyzer test, would give rise to a postconviction claim of inadequate assistance of counsel and a possible reversal via a CPL 440.10 motion or coram nobis relief. Indeed, by raising the untimeliness of his motion before this Court, albeit in a different context, appellate counsel tacitly concedes that there was no "strategic or other legitimate explanation[ ]" (People v Rivera, 71 NY2d 705, 709 [1988]) for his failure to file a motion to suppress. Although defense counsel otherwise competently represented defendant, getting his acquittal on the common law claim, it appears that this single omission might have deprived defendant of meaningful representation. In fact, suppression of the results of the Intoxilyzer test would have been dispositive of the only count on which defendant was convicted, operating a motor vehicle while intoxicated (see Vehicle and Traffic Laws § 1192[2]), because this is a per se statutory claim based solely on the results of the Intoxilyzer test  that defendant was driving with a blood alcohol content of at least .08%. Ultimately, on the record before this Court we can safely conclude that a motion to suppress the evidence on the ground now asserted on appeal would have had a strong chance of success (see People v Caban, 5 NY3d 143, 152 [2005]).
For the foregoing reasons, I would find that the court below should have addressed the merits of defendant's untimely motion challenging the voluntariness of the Intoxilyzer test. However, the remedy that defendant requests — reversing the conviction, granting the suppression motion, and dismissing the indictment — is not appropriate (People v Giles, 73 NY2d 666, 671 [1990]). Instead, I would remand the proceedings to the trial court to conduct a hearing on the issue of the voluntariness of the Intoxilyzer test. 


 
 THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
 

ENTERED: August 5, 2021



Footnotes

Footnote 1: A defendant may move to suppress the results of a chemical test administered pursuant to Vehicle and Traffic Law § 1194(3) (see CPL 710.20[5]) by filing a motion "within forty-five days after arraignment and before commencement of trial, or within such additional time as the court may fix upon application" (see CPL 255.20[1]).