People v Callery (2025 NY Slip Op 50986(U))

[*1]

People v Callery

2025 NY Slip Op 50986(U)

Decided on June 13, 2025

City Court Of Johnstown, Fulton County

Viscosi, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 13, 2025
City Court of Johnstown, Fulton County

The People of the State of New York, Plaintiff,

against
John Callery, Defendant.

CR-00475-24

MICHAEL POULIN, ESQ., Fulton County District Attorney, County Office Building, 223 West Main Street, Johnstown, NY 12095
BRITTANY A. WHITE, ESQ. OF COUNSEL: Assistant District Attorney,
JOSEPH R. SISE, Attorney for Defendant

Michael C. Viscosi, J.

On March 26, 2025 this Court conducted a Huntley/Dunaway/Refusal hearing following motion practice. The following now constitutes the Court's findings of fact and conclusions of law. FINDINGS OF FACT
At the hearing, the People called one witness, Officer Caleb Gifford, of the Johnstown Police Department. The Court found Officer Gifford to be credible and noted his ARIDE training and its relevance to impaired and intoxicated driving cases.
On October 12, 2024 Officer Gifford was in a marked patrol vehicle parked along North Perry Street. At approximately 11:16 am he observed a white 2020 Silverado with "no functioning passenger side brake lamp" and proceeded to effectuate a stop of that vehicle.
Officer Gifford testified to observing the defendant's "impaired speech, impaired motor coordination" and noticed that his movements "were not smooth." He also detected a "strong odor of alcoholic beverage." Defendant seemed agitated and stated that he had not consumed alcohol. He subsequently informed Officer Gifford that he was contacting his lawyer, refusing to remove his sunglasses or answer any additional questions and he then proceeded to roll up his window.
At this point Officer Gifford ordered defendant "out of the vehicle for the purposes of a DWI investigation" and requested backup. Defendant was ordered to open his door and was pulled from the vehicle with assistance from Officer Kollar and was then "detained in handcuffs." Once in custody, defendant appeared to be unsteady on his feet and was observed to exhibit bloodshot eyes. An inventory search of his vehicle revealed a half full container of Twisted Tea alcoholic beverage.
Defendant requested that he speak with his attorney but it was deemed to be impractical to allow such a call to be made roadside. Defendant was transported in handcuffs to the Johnstown Police Department where DWI refusal warnings were read at 12:00, 12:03, 12:30 and [*2]12:33 pm. Defendant remained silent when requested to submit to a chemical test after the first two readings, said "no" to the third, but then called his attorney on the telephone before warnings were read a fourth time where he then responded affirmatively.
Defendant attempted to provide a breath sample in the Datamaster twice but was unsuccessful. Both attempts resulted in a blank error message. Officer Gifford testified that a "number of factors could have caused" the blank error reading and also stated on direct examination that "there could be chemicals that could have caused the interference." The Johnstown Police Department was currently undergoing extensive floor cleaning involving applied chemicals and this was considered to be a possible factor that contributed to the issues with the Datamaster.
Out of caution that a chemical interference was in play, the defendant was subsequently transported to the Fulton County Sheriff's Department. There, the waters became murkier. Defendant was again read the proper DWI warnings and attempted on two occasions to provide a breath sample into that Datamaster instrument.
Officer Gifford testified that the first attempt resulted in an invalid sample and the second in a blank error reading. While Officer Gifford did not conduct the breath test, he observed a printout with the readings but could not explain the discrepancy. Additionally, Officer Gifford could not be certain "as to whether the tests were administered within two hours" of arrest at the Sheriff's Department.
"Reasonable cause to believe that a person has committed an offense exists when evidence or information which appears reliable discloses facts and circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such an offense was committed and that such person committed it.'" (People v. Stone, 43 Misc 3d 705, 710 [Crim. Ct., City of NY, NY Co. 2014] quoting CPL § 70.10 [2]).] The Court finds that the stop of defendant's vehicle was supported by a reasonable suspicion that a violation of the vehicle and traffic law had occurred.
At a Dunaway hearing the People must only show that it was "more probable than not" that the accused "exhibited actual impairment" from the consumption of alcohol (See People v. Koszko, 57 Misc 3d 47, 49 [App. Term, 2d Dept. 2017], [see also, People v. Vandover, 20 NY3d 235, 239 [2012]). [Therefore, the People should provide evidence that the accused person exhibited "dimensions of actual physical coordination impairment." (People v. Gullo, 51 Misc 3d 150[A], at *1 [App. Term, 2d Dept. 2016]; see also People v. Rich, 25 Misc 3d 126[A], at * 1 [App. Term, 2d Dept. 2009]). These dimensions commonly include—but, of course, are not limited to—"slurred speech and unsteadiness." (Gullo, 51 Misc 3d 150[A], at *1; see also People v. Anzalone, 72 Misc 3d 140[A], at *1 [App. Term, 2d Dept. 2021]). Other examples of actual physical coordination impairment could include unexplained erratic driving, (People v. Hillman, 71 Misc 3d 127[A], at *2 [App. Term, 2d Dept. 2021]; People v. Mohabir, 77 Misc 3d 1219[A], at *4 [Crim. Ct., Queens Co. 2023]); rambling, (People v. Crane, 156 AD2d 704 [2d Dept. 1989]); traffic violations indicative of impairment, (People v. Freeman, 37 Misc 3d 142[A], at *2 [App. Term, 2d Dept. 2012]); or an accident consistent with losing control, (People v. Hogue, 136 AD3d 1351 [4th Dept. 2016]; People v. McKenzie, 52 Misc 3d 1217[A], at *3 [Crim. Ct., Kings Co. 2016])." (Id. at *3).
"Overall, there are many observations from which the police could determine that it is "more probable than not" that a person is "actually impaired": "the driver's driving performance, whether the driver exhibits any physical indicia of [impairment], whether that person is steady [*3]on his or her feet, performance on roadside sobriety tests, results of the road side breath test, statements made to the officer during the investigatory stage of the encounter and the general demeanor of the driver." (People v. Conrad, 75 Misc 3d 1224[A], at *5 [Just. Ct., Monroe Co. 2022]).
While observations made by Officer Gifford were certainly not overwhelming as to the defendant's level of impairment, this Court finds that the arrest was supported by probable cause that defendant had operated a motor vehicle in violation of §1192 of the NYS Vehicle and Traffic Law. The People carry a low burden to validate the arrest with probable cause and Officer Gifford credibly testified to observing signs of impairment exhibited by the defendant after a lawful stop of his vehicle.
With respect to statements made by the defendant after he was removed from his vehicle, the standard for assessing an individual's custodial status is "whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" People v Paulman, 5 NY3d 122, 129 (2005). As for what constitutes an interrogation under Miranda, interrogation refers not only to express questioning, but also encompasses any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response. People v Paulman, 5 NY3d at 129. It seems clear from the evidence that to any reasonable person the Defendant was plainly not "free to leave" and was being "interrogated" by the officers in order to elicit incriminating responses while being removed from his vehicle and handcuffed. Therefore, any statements made by defendant once he was extracted from his vehicle and placed into custody should be suppressed since he was responding directly to the officers.
Lastly, as to whether the defendant intentionally failed to provide a sample in the Datamaster, the onus is on the People to establish any potential refusal. "Evidence of a refusal to submit to such chemical test.. shall be admissible" at trial "upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal" (VTL §1194[2][f] ). A refusal cannot be established if the breath test was administered without result for reasons which were not attributable to defendant (Matter of Underwood v. Kelly, 5 AD2d 740 [3d Dept. 1957] see also, People v. Adler, 145 AD2d 943 [4th Dept. 1988]) [emphasis added].
In the present case, the People have failed to present sufficient evidence that the failed tests were the result of the Defendant's persistent refusal, rather than the instrument's inability to properly register a result based upon interference of other factors (i.e. the other chemicals in the room used to clean the floor). As a result, the People will be unable to present this alleged refusal to a jury for their consideration. Evidence regarding any failed breathalyzer tests obtained prior to the two-hour time limit cannot be admitted and "[t]he statute "mandates that the breathalyzer test be performed within a two-hour time period following arrest" pursuant to section 1194(2)(a) (People v. Finnegan, 85 NY2d 53, 59, 623 N.Y.S.2d 546, 646 N.E.2d 758 [1995] [emphasis added] )" (People v. Odum, 31 NY3d 344, 350 [2018]).
When "the breathalyzer test was not performed within two hours of defendant's arrest, and the requirements necessary to obtain a court order pursuant to Vehicle and Traffic Law § 1194(3) were not met, the test results were not admissible under the statutory scheme." (People v. Odum, id. at 350 [emphasis added]). The Defendant's two differing breath test error messages were outside of the two-hour window and would also be inadmissible.
Based upon these conclusions, this Court finds that Officer Gifford had probable cause [*4]for both the stop and arrest and defendant's motion for a dismissal of the charges against him are therefore denied. However, statements made post-arrest are suppressed and any alleged refusal of the breathalyzer instrument is also suppressed.
The foregoing constitutes the Decision and Order of this Court.